[No. 9179.  Department Two.  July 24, 1911.]

CITIZENS SAVINGS BANK, *Appellant*, v. C. T. HOUTCHENS
*et al.*, *Respondents.*[1]

BILLS AND NOTES—ACTIONS—PLEADING—DEFENSES—WAIVER — IN-
CONSISTENCY. The denial of an allegation that plaintiff was the
owner and holder of a note for value before maturity and in due
course, is not waived by or inconsistent with an affirmative defense
alleging want of consideration and fraud in the inception of the
note, and that plaintiff had actual notice of the infirmity, "at the
time it became the owner and holder of such note as in the com-
plaint alleged;" since the admission that the plaintiff is the
owner and holder of the note does not admit that it was the holder
in due course for value, in good faith, before maturity.

BILLS AND NOTES—ACTIONS—TITLE—BONA FIDE PURCHASER—BUR-
DEN OF PROOF—EVIDENCE—SUFFICIENCY. Where it was shown by
defendants that a promissory note, given in part payment of a
stallion, was tainted with fraud in the hands of the original
payees, who were dealers in horses, the stallion having been re-
turned because of false representations, in a suit on the note by a
bank as endorsee, the burden of showing that it was a holder in
due course for value before maturity, within Rem. & Bal. Code,
§ 3450, is not sustained so as to entitle plaintiff to a directed ver-
dict, where the only evidence of the bank's alleged ownership
other than possession and a blank endorsement was that of its
cashier, an interested witness, who testified that he had known
the payees for years, and the character of their business, that he
purchased the note before maturity. with twenty-five others of
like character, and had previously purchased others in which liti-
gation had arisen, that he expected the original payees to protect
the bank on this note for expenses of litigation, although there
was no written agreement to that effect, and that none of the
makers were known to the bank or their solvency investigated; in
view of the fact that his credibility was for the jury, that he
carefully refrained from giving any of the attending circum-
stances, and that no other witnesses to the transaction, or books
or records were produced.

Appeal from a judgment of the superior court for Stevens
county, Carey, J., entered March 23, 1910, upon the verdict
of a jury rendered in favor of the defendants, in an action
on a promissory note. Affirmed.

[1] Reported in 116 Pac. 866.

*Anderson & Stull*, for appellant.

*Jesseph & Grinstead*, for respondents.

CROW, J.—Action by The Citizens Savings Bank, a corporation of Columbus, Ohio, against C. T. Houtchens, J. E. Seale, S. W. Champ, S. H. Bryan, M. W. Teeple, W. L. Pike, H. M. Jaggers, O. P. M. Simcoke, James Crawford, and A. G. Smith, on a promissory note claimed to have been purchased from McLaughlin Brothers, payees, for value, before maturity and in due course. The defendants answered with denials, and pleaded three affirmative defenses by which, in substance, they contended the note was without consideration, had been fraudulently obtained, had not been delivered to the payees, had not been signed by the defendant Houtchens or by any other person authorized to sign for him, and that the plaintiff had obtained the note with notice and knowledge of infirmity in the instrument and defect in the title of the payees who negotiated it. A verdict was returned for defendants. The plaintiff has appealed from the final judgment entered thereon.

Respondents are citizens of Stevens county, in this state. The note is for $1,400, dated September 9, 1905, due September 1, 1907, bears interest from date, and is payable to the order of McLaughlin Brothers at Colville, Washington. Respondents' evidence shows that one Olmstead, representing McLaughlin Brothers, whose headquarters were in Columbus, Ohio, and Kansas City, Missouri, made a proposition to sell to respondents a stallion then in his possession, which he represented and warranted to be a first-class imported Percheron horse, sound in every respect; that his representations were false and fraudulent; that they were relied upon by respondents; that in compliance with Olmstead's insistence and demand, a corporation to own the horse was to be organized by respondents under Olmstead's direction and supervision; that he fraudulently procured possession of the note without its being delivered; that he immediately left Colville, taking

the note with him; that he has not been·there since; that the corporation was never formed; that the horse, ·not being as warranted, was tendered to McLaughlin Brothers and a return of the notes demanded; that later two other notes each of like amount, fraudulently procured from respondents, were returned to them; that the horse was returned to McLaughlin Brothers through another agent; and that the note now in suit was never· returned to the makers.    The facts sh
owing the alleged fraud of Olmstead, the nondelivery of the note, and the want of consideration, are more fully stated in the pleadings and briefs, but need not be here recited in detail. Sufficient evidence was introduced by respondents to sustain their affirmative defenses.    Appellant made no attempt whatever to controvert or rebut any of this evidence, but in its brief says:

"The respondents, though denying the allegations of the complaint, have utterly failed to substantiate such denial by evidence, but confine their proof to the support of their affirmative defenses.    As to these defenses, aside from the allegations contained therein imputing knowledge of defect in title to the appellant, they appear to have a preponderance of evidence, that is to say, evidence as to the alleged fraud between the original parties to the note in suit; but they fail to support the further allegations contained in said affirmative defenses, to wit, the allegations that appellant had knowledge of the facts and circumstances constituting said alleged fraud."

The vital question on this appeal is whether, under §§ 3443 and 3450, Rem. & Bal. Code, appellant has been shown to be a *bona fide* holder for value, before maturity and in due course, the title of the original payees having been defective, under § 3446, Rem. & Bal. Code.    It is, however, first contended that the trial court erred in denying appellant's motion to strike the three affirmative defenses.    Appellant alleged its incorporation under the laws of Ohio, that McLaughlin Brothers had indorsed the note in blank, and that appellant is now the owner and holder thereof. . These

allegations were denied. In pleading their affirmative defenses respondents, however, alleged:

"And the *said plaintiff corporation,* its officers, agents and employees, had actual knowledge of all of said false and fraudulent statements, representations and pretensions at the time it became *the owner and holder of said note as in the complaint alleged.*"

Appellant's contention seems to be that this affirmative allegation is inconsistent with the previous denials of the answer, in that it in effect admits, (1) appellant's incorporation, and (2) that appellant is owner and holder of the note. Assuming, without deciding, the effect to be as contended, appellant would not, by reason of such alleged inconsistency, be entitled to an order striking the affirmative defenses of fraud, failure of consideration, and nondelivery, even though it might possibly be relieved from the necessity of introducing evidence to prove its incorporation. Appellant, as indorsee, might hold and own the note, but if it was not as such indorsee a holder in due course, for value, before maturity in good faith, and without notice of any infirmity in the instrument or defect in the title of the payees who negotiated it, appellant would own and hold it subject to the affirmative defenses pleaded, such defenses being sustained by competent proof. The motion was properly denied.

By its remaining assignments, appellant, in effect, contends that the trial court erred in denying its motions for a directed verdict, and for judgment *non obstante veredicto.* Its entire contention on this proposition seems to be that it has shown ownership in due course, for value, before maturity, without notice or knowledge. The only evidence of an assignment to appellant or its alleged ownership or want of notice was given by Frank R. Shinn, its cashier. No corroboration of his testimony, other than possession of the note and a blank indorsement of the payees thereon, appears in the record. No books, records, or documents of the bank, disclosing the transaction or showing payment of value, were

produced. Shinn testified he had known the payees and the character of their business for many years; that he purchased this note with twenty-five others on August 15, 1907, shortly prior to its maturity; that he forwarded it to Colville, for collection, where it was protested for nonpayment; that he had previously purchased numerous notes from McLaughlin Brothers; that litigation had arisen on a number of them; that he expected McLaughlin Brothers to protect the bank; and that they would protect it on this note for expenses of this litigation, although he had no written agreement to that effect other than the indorsement. No other officer or employee of the bank testified. McLaughlin Brothers and Olmstead, their agent, failed to appear as witnesses, and their absence was not explained. There was no evidence that Shinn or the bank knew any of the respondents, or made any investigation as to their solvency. Yet almost immediately after making the purchase, appellant forwarded the note to Colville for collection, and shortly thereafter instituted suit in this jurisdiction against the makers, although McLaughlin Brothers then maintained headquarters in the city of Columbus, and were to protect the note as indorsers.

These circumstances would seem to indicate a singular anxiety on the part of the bank to invest in lawsuits rather than in first-class negotiable securities. The evidence of this cashier, although undisputed by oral testimony of any other witness, is that of an interested witness. Absence of what he carefully refrains from telling, to say nothing of his affirmative statements, considered in the light of his interest and the attending circumstances, detracts materially from the convincing force of his evidence, the credibility of which was for the jury. Whether appellant was a holder in due course was to be determined by them. The burden imposed upon respondents was to sustain the allegations of their affirmative defenses. This they evidently did to the satisfaction of the jury. Having done so, it at once became apparent that the original payees' title to the note was de-

fective.   Section 3446, *supra*.   Under § 3450, *supra*, the
burden then devolved upon appellant to prove that it or
some person under whom it claims acquired the title as holder
in due course.   If the jury in weighing the evidence dis-
credited Shinn, an interested witness, which they were en-
titled to do, and doubtless did, appellant failed in its proof.
*Keene v. Behan*, 40 Wash. 505, 82 Pac. 884; *Gosline v. Dry-
foos*, 45 Wash. 396, 88 Pac. 634; *Ireland v. Scharpenberg*,
54 Wash. 558, 103 Pac. 801.   Appellant's only attempt to
sustain the burden imposed upon it was by means of the un-
supported testimony of Shinn, an interested witness.   His
credibility was for the jury, and they refused to believe him.
Appellant therefore failed in its attempt to show it was a
holder in due course, after respondents by their evidence had
shown the original payees' title was defective.

The judgment is affirmed.

DUNBAR, C. J., MORRIS, and CHADWICK, JJ., concur.