[Civil No. 1674.   Filed December 23, 1919.]

[185 Pac. 821.]

# WILLIAM G. LENTZ, Appellant, v. L. D. LANDERS, Appellee.

1. BILLS AND NOTES—EVIDENCE THAT NOTE WAS PROCURED BY FRAUD FOR JURY.—In an action on a note given for the purchase price of corporate stock, where defendant asserted that the note was procured through fraud, and that plaintiff was not the *bona fide* holder, evidence that the note was procured through fraud *held* sufficient to go to the jury.

2. CORPORATIONS—FALSE REPRESENTATIONS IN SALE OF STOCK CONSTITUTING FRAUD.—The general rule is that any false representations of a material fact by either party to a contract for the sale of corporate stock constitutes fraud if it is made with knowledge that it is false, or recklessly made without any belief in its truth, with intent that it shall be acted upon by the other party, and if it is relied upon by the other party to his injury.

3. CORPORATIONS—REPRESENTATIONS OF MATERIAL FACT AS DISTINGUISHED FROM MATTER OF OPINION ON SALE OF STOCK.—False representation that a corporation held a patent to an article proposed to be manufactured, made in selling corporate stock, is a representation of a material existing fact, and not a mere statement of opinion.

4. CORPORATIONS—RIGHT OF PARTY TO RELY ON FALSE REPRESENTATION AS TO STOCK SOLD.—Where the seller of corporate stock falsely represented that the corporation held a patent, the fact that the buyer could have demanded the production of the patent, and in that way ascertained falsity of the representation, will not preclude him from setting up such fraud in an action on a note given for the stock.

5. CORPORATIONS—FRAUD IN SALE OF STOCK—PARTIAL INVESTIGATION NOT DEFEATING RELIEF FOR.—Partial investigation and reliance in part on false representations made by seller does not preclude relief to a purchaser of corporate stock on the ground of fraud.

6. CORPORATIONS—FALSE REPRESENTATIONS AS TO VALUE OF CORPORATE STOCK.—While ordinarily statements as to the present or future value of corporate stock are merely matters of opinion, and though false do not constitute actionable fraud, yet where a party making representations as to the value of stock has or assumes to have special knowledge, and knows that the other party is ignorant of the value, such false representations will be regarded as the statements of existing facts and not mere opinion, so false representations as to value by the president of a corporation, made in selling the stock, will be deemed representations of material facts.

7. CORPORATIONS—UNFULFILLED PROMISE AS FRAUD IN SELLING STOCK AUTHORIZING RESCISSION.—While a mere unfulfilled promise will not furnish legal ground for avoiding a contract, nevertheless when a party leads another into a contract by making him a promise which ·he has no intention at the time of performing, such promise constitutes a fraud for which the contract might be rescinded; con-

6. For authorities discussing the question of liability of corporate office for misrepresentations which induced the sale or purchase of corporate stock, see note in 1 L. R. A. (N. S.) 258.

7. As to whether future promise is actionable fraud, see note in 10 L. R. A. (N. S.) 640.

sequently a promise by seller of corporate stock to buy it back within a year when made with no intention of fulfillment, constitutes fraud.

8. BILLS AND NOTES—BURDEN ON HOLDER OF NOTE PROCURED BY FRAUD TO SHOW GOOD FAITH.—Under Civil Code of 1913, paragraph 4204, the holder of a note has the burden of showing that he acquired title in due course upon proof by the maker that it was procured through the payee's fraud.

9. BILLS AND NOTES—WHO ARE HOLDERS IN DUE COURSE.—Under Civil Code of 1913, paragraph 4197, the holder of a note, in order to establish that he was a holder in due course, must show by competent evidence that he became the holder of the note before it was overdue and without notice that it had been previously dishonored; that he took it in good faith and for value, and without notice of any infirmity.

10. BILLS AND NOTES—EVIDENCE THAT PLAINTIFF WAS NOT HOLDER IN DUE COURSE.—In an action on a note obtained through fraud, evidence *held* to warrant a finding that plaintiff, who paid only $2,500 for the note, which was for $3,500, was not a holder in due course.

11. EVIDENCE—RIGHT TO DISREGARD TESTIMONY OF INTERESTED WITNESS. Where plaintiff claimed to be a holder in due course of a note procured through fraud, *held* that, though he was not directly contradicted, the jury might, in view of the suspicious circumstances, discredit his testimony as that of an interested witness.

12. CORPORATIONS—EVIDENCE OF FRAUD IN SALE OF STOCK.—Where fraud in sale of corporate stock is charged, the law permits a very broad range to be given to the testimony.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. F. C. Struckmeyer, for Appellant.

Mr. J. L. Gust, for Appellee.

BAKER, J.—This was an action to recover upon a promissory note for $3,500, given by the defendant, L. D. Landers, to one A. H. Weber, and by Weber indorsed to the plaintiff, William G. Lentz. The de-

9. Rights of *bona fide* purchaser of negotiable note procured by fraud, note, 41 **Am. Rep.** 607.

9. *Bona fide* holder as unaffected by fraud in inception of negotiable instrument, note, 11 **Am. St. Rep.** 309.

fendant admitted the execution of the note and non-payment, but alleged that the note was without consideration, and that it was fraudulently obtained, and charged that the plaintiff had notice of these defenses before purchasing the note. A verdict was returned by the jury in favor of the defendant, and judgment was thereupon entered. Plaintiff moved for a new trial, and appealed from the judgment and order denying his motion. ·

The natural course of inquiry in the case would seem to direct itself to two questions: First, was the evidence of fraud in the procurement of the note sufficient to entitle the defendant to have that question submitted to the jury had the suit been between the original parties only? Second, was the evidence touching the good faith of the plaintiff in the purchase of the note sufficient to entitle the defendant to have that question submitted to the jury?

As to the first question. The facts leading up to the execution of the note may be briefly summarized as follows: Landers was a stock grower, residing at or near Camp Verde, Yavapai county, Arizona, and appears to have been a man of limited business experience, especially in reference to dealing in corporate stock or conducting the affairs of a corporation. Landers came to Phoenix in November, 1916, and met a Mr. Burt, who introduced him to A. H. Weber, the original payee of the note. Weber and Burt seem to have been jointly interested in procuring purchasers for and selling the stock of the Nonelectric Fan Company, a corporation organized under the laws of the state of Arizona. Weber was president of the corporation. It seems that the company proposed to embark in the business of manufacturing and selling a fan that would operate without the use of electricity, by means of being wound up only. Having been introduced to Landers, Weber broached the sub-

ject of selling him some shares of the stock of the
company. Landers told Weber that he didn't wish
to buy any of the stock, but Landers says that Weber
kept after him until he finally talked him into buying
1,750 shares of the stock of the company, for which
Landers gave to Weber the note in question. The
note was for $3,500, payable in sixty days, with in-
terest at the rate of six per centum per annum.
The stock was attached to the note as collateral.
Landers testified that during the negotiation for the
sale of the stock, Weber represented to him that the
company held three patents on the nonelectric fan
which the company was going to manufacture, and
that the third patent covered all the others; that the
1,750 shares of stock were worth at least $2 per
share, and would rapidly increase in value, and that
in the course of a few years the stock would be worth
"all the cattle that Landers had," it would enhance
in value so much; that if Landers would keep the
stock for one year, at the end of that time he
(Weber) would repurchase the stock from him for
the price of $5,000, and that if Landers did not have
the money on hand to take up the note when it fell
due that he (Weber) would extend it from time to
time.

The evidence tends to show that Landers relied
upon these representations in making the purchase
of the 1,750 shares of the stock of the company. The
evidence further discloses that the company had no
patent for the fans proposed to be manufactured; that
the stock was of no substantial value, the 1,750 shares
in question having been sold at public auction for
not exceeding $20. Evidently Weber had no inten-
tion of carrying out his promise, at the time he made
it, to repurchase the stock from Landers at the end
of one year for $5,000, or to make any extension of
the time for the payment of the note, since the evi-

dence shows that he at once sold and transferred the note to the plaintiff and departed from the state permanently. We think the foregoing facts were sufficient to authorize the submission of the case to the jury upon the question of fraud in procuring the note had the suit been between the original parties only. Under the circumstances Weber could never have enforced the payment of the note, and if the plaintiff, Lentz, is not a purchaser in good faith and without notice of the infirmities of the note, he is in no better position than Weber.

The general rule is that any false representation of a material past or existing fact by either party to a contract for the sale of stock constitutes fraud, if it is made with knowledge that it is false, or recklessly, without any belief in its truth, with intent that it shall be acted upon by the other party, and if it is relied upon by the other party to his injury. 6 Fletcher, Cyclopedia Corp., par. 3863; *Moore* v. *Carrick*, 26 Colo. App. 97, 140 Pac. 485.

Unquestionably the false representation that the company held a patent to the fan proposed to be manufactured was the representation of a material existing fact, and was not matter of opinion merely. *Spreckels* v. *Gorrill*, 152 Cal. 383, 92 Pac. 1011; *David* v. *Park*, 103 Mass. 501; *McKee* v. *Eaton*, 26 Kan. 226; *Tabor* v. *Peters*, 74 Ala. 90, 49 Am. Rep. 804; *Hicks* v. *Stevens*, 121 Ill. 186, 11 N. E. 241.

It is true that the defendant had an opportunity to ascertain whether or not the company possessed a patent to the fan before he executed the note. He could have demanded that the patent be produced, but the law will not deny him relief, although he may have been wanting in ordinary prudence in relying upon the representations of Weber concerning the patent. True, that in the ordinary business transactions of life men are expected to exercise reason-

able prudence, and not to rely upon others with whom they deal to care for and protect their interests, but this requirement is not to be carried so far that the law shall ignore or protect positive intentional fraud successfully practiced upon the simpleminded or unwary. "As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him." *Maxfield* v. *Schwartz,* 45 Minn. 150, 10 L. R. A. 606, 47 N. W. 448. It is argued that the defendant had full opportunity to examine the fan exhibited to him before he signed the note. This appears to be true, but the fraudulent representations related not to the fan itself, but to the patent, and concerned a material inducement to the contract. Furthermore, partial investigation, and a reliance in part upon representations, does not preclude relief on the ground of fraud. *Freeman* v. *F. P. Harbaugh Co.,* 114 Minn. 283, 130 N. W. 1110.

As to the false representations of the value of the stock, it may be said that, as a general rule, statements as to the present or future value of corporation stock are mere matters of opinion, and do not constitute actionable fraud, although they may be false. But there is a well-recognized exception to this general rule. Where the party making the false representations as to the value of the stock has, or assumes to have, special knowledge as to its value, and knows that the other party is ignorant of its value, and is relying upon his representations on the subject, the false representations will be regarded as the statement of an existing fact and not mere opinion. 6 Fletcher, Cyclopedia Corp., par. 3868; *Murray* v. *Tolman,* 162 Ill. 417, 44 N. E. 748; *Poole* v. *Camden,* 79 W. Va. 310, L. R. A. 1917E, 988, 92 S. E. 454, *Ohlwine* v. *Pfaffman,* 52 Ind. App. 357, 100

N. E. 777. Weber was president of the corporation. He was in a position to know, and doubtless did know, that the stock he was selling was worthless. He must have known that Landers was ignorant of the value of his stock, and was relying upon his statements as to values. In such a case, it must be held that the representation was the statement of an existing fact, and not mere expression of an opinion.

It is contended by the plaintiff that fraud cannot be predicated upon the unkept promises of Weber to purchase the stock back from Landers within a year, at the price of $5,000, and the further promise to extend the time of payment of the note if Landers did not have the money on hand to pay when the note fell due. It is urged that these were but collateral promises, and not statements of existing facts. The rule of law upon this point is that, while a mere unfulfilled promise will not furnish legal ground for avoiding a contract made upon the faith of the unfulfilled promise, nevertheless, when a party leads another into a contract by making him a promise he has no intention at the time of performing, such a promise constitutes a fraud, and for such fraud the contract entered into may be rescinded. *Southern Loan & Trust Co.* v. *Gissendaner,* 4 Ala. App. 523, 58 South. 737; *Cerny* v. *Paxton & Gallagher Co.,* 78 Neb. 134, 10 L. R. A. (N. S.) 640, 110 N. W. 882. Doubtless the jury concluded that the defendant had fallen into the hands of sharpers and had been swindled, and, as we think, upon sufficient evidence.

Fraud having been proven upon the part of Weber in procuring the note, the burden devolved upon the plaintiff to prove that he acquired the title to the paper in due course. Civ. Code 1913, par. 4204; *Navajo-Apache Bank & Trust Co.* v. *Wakefield,* 20 Ariz. 335, 180 Pac. 529; *People's Nat. Bank* v. *Taylor,* 17 Ariz. 215, 149 Pac. 763. In order to bear

this burden, the plaintiff was required to show by competent evidence: (1) That he became the holder of the note before it was overdue and without notice that it had been previously dishonored, if such was the fact; (2) that he took it in good faith and for value; and (3) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Civ. Code 1913, par. 4197; *Arnd* v. *Aylesworth,* 145 Iowa, 185, 29 L. R. A. (N. S.) 638, 123 N. W. 1000. In the case last cited, the Supreme Court of Iowa said:

"And to justify the court in directing a verdict in her favor the testimony of the *bona fide* character of her holder must not only be without substantial evidence tending to impeach it, but the showing in its support must be so clear and unequivocal as to leave no room for difference of opinion concerning it among fair-minded men"—citing authorities.

Bearing the foregoing principles in mind, we take up the second question. The plaintiff was the only witness testifying to the facts of the purchase of the note by him. His testimony, in substance, was as follows: That Mr. Burt and Mr. Weber came to his office in Phoenix on November 21, 1916, and that Burt introduced Weber to him. That he didn't know Weber, and had not seen him before. That Weber wanted to sell him the note at a discount of five per centum. That he told Weber that he didn't wish to buy the note under the circumstances, since he would have to borrow the money at the bank for that purpose. That Weber finally told him that he would take $2,500 for the note, if the deal was closed at once. That he told Weber that he would have to investigate the paper before he bought it, and that Weber referred him to Mr. George Babbitt, then stopping at the Hotel Adams. That he went to the hotel and saw Mr. Babbitt, and asked him about the paper,

and that Babbitt said, "Yes, that paper is all right," and that he knew Mr. Landers, and that he would be glad to buy the paper himself, but he had just closed some very heavy deals on a cattle ranch. That, coming out of the hotel, he met a Mr. Jones, who told him that he thought the paper was all right. That he also met Mr. A. J. Diamond, and asked him about the paper, and that Diamond said: "That note is all right. I am a neighbor of Mr. Landers, and I know that the note is all right." That plaintiff then returned to his office, and gave Weber the money for the note, paid him by way of a check. (The check for $2,500 was introduced in evidence.) That he sent a telegram to Landers addressed to Camp Verde, asking if he had executed the note to Weber for $3,500. That he could not recall whether it was before or after he bought the note that he sent the telegram, but he thinks that the telegram was sent on the day he bought the note at about the hour of 12 o'clock. That no answer was received to this telegram. That he closed the deal for the note at about 3 o'clock P. M. on November 21, 1916. That he knew nothing about the Nonelectric Fan Company at the time of the purchase, or the value of the stock at the time he bought the note. After this testimony, was introduced, Landers was recalled, and testified that he got the telegram in Flagstaff several days after he had left Phoenix, and that he threw it away, as he thought that he had been "hornswaggled." A. J. Diamond was called, and testified that he met the plaintiff in his office during November, 1916, but that he didn't remember having any conversation with the plaintiff about the Landers note. That he had heard the plaintiff's testimony in regard to talking to him in the street, and that it might be possible that some conversation occurred between them at that time, but that he would not say that the plain-

tiff had showed him the Landers note, and asked him if that was Landers' signature. That he had no recollection whatever of seeing the Landers note, or of having any conversation with the plaintiff about the note.

From the foregoing facts, and the reasonable inferences deducible therefrom, we think the good faith of the plaintiff in the purchase of the note was a question of fact for the jury. His good faith depended entirely upon his own testimony, except in the particular that he was corroborated by the production of the check he had given in payment of the note. The courts in New York hold to the doctrine that:

"The mere fact that the witness is interested in the result of the suit is sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact, and that either a court or a jury is at liberty to disbelieve his testimony solely on the ground that he is interested."

—as will be seen by reference to the many authorities cited in the footnote to section 78, volume 1, Moore on Facts. The same rule prevails in many other jurisdictions. *Citizens' Sav. Bank* v. *Houtchens,* 64 Wash. 275, 116 Pac. 866; *Gregory* v. *Filbeck's Estate,* 20 Colo. App. 131, 77 Pac. 369; *Meardon* v. *Iowa City,* 148 Iowa, 12, 126 N. W. 939; *Laramore* v. *Minish,* 43 Ga. 282; *Heierman* v. *Robinson,* 26 Tex. Civ. App. 491, 63 S. W. 657; *Park* v. *Johnson,* 20 Idaho, 548, 119 Pac. 52. The United States Supreme Court takes a similar view of the testimony of an interested witness (*Sonnentheil* v. *Moerlein Brewing Co.,* 172 U. S. 401, 43 L. Ed. 492, 19 Sup. Ct. Rep. 233 [see also, Rose's U. S. Notes]), and, as might be expected, the United States circuit courts of appeal follow the same rule. *United States* v. *Sing Lee* (D. C.), 125 Fed. 627; *Grand Trunk Ry. Co.* v. *Cobleigh,* 78 Fed. 784, 24 C. C. A. 342. In addition

to giving force and effect to the foregoing rule, and looking at the facts testified to by the plaintiff, we find several circumstances that the jury might properly take into consideration in determining the good faith of the plaintiff in the transaction. In the first place, he purchased a note for $3,500, payable in sixty days, bearing interest at the rate of six per centum per annum, at a discount of $1,000. If he had paid the face value of the note, less a reasonable discount, there would have been less reason to doubt his good faith. In the second place, he testified that he knew that the note had been given for the purchase of stock, but made no attempt to show that the stock had any value. In the third place, he testified that he bought the note from Weber, who was a stranger to him, and didn't prove, or attempt to prove, that Weber was solvent, or a man of reputable business standing. In the fourth place, he made no effort to reinforce his testimony by calling Babbitt and Jones to testify in his behalf as to his inquiries about the note. Such evidence would have been admissible for the purpose of corroborating the plaintiff if he had made such inquiries. In the fifth place, he testified that the witness Diamond told him that he was a neighbor of Landers, and that the note was all right. Diamond failed to corroborate the plaintiff in this statement, and professed to have no memory of having any conversation with the plaintiff about the Landers note. Whether the plaintiff acted in good faith in making the purchase of the note was a vital question before the jury, and if the jury, in view of the suspicious circumstances, discredited the plaintiff as an interested witness, which they were entitled to do, and doubtless did do, the plaintiff failed in his proof to show that he was a holder in due course. *Citizens' Sav. Bank* v. *Houtchens, supra; Arnd* v. *Aylesworth, supra.*

Several assignments of error are made, based upon the admission of certain testimony, but we do not consider these assignments as being of sufficient importance to require separate discussion. Fraud was charged, and it is a well-recognized rule that whenever a question of fraud arises in a case, the law permits a very broad range to be given to the testimony. Under the issues involved in the case, we are of the opinion that the court was without error upon its rulings upon the testimony.

After a careful examination and consideration of the entire record, we do not observe any reversible error, and the judgment of the lower court is therefore affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.