[Civil No. 2042. Filed October 6, 1924.]

[229 Pac. 391.]

# CYRUS W. DAVIS, Appellant, v. FIRST NATIONAL BANK OF OAKLAND, a Corporation, Appellee.

1. MORTGAGES—EQUITY COURTS HAVE INHERENT ORIGINAL JURISDICTION OF ACTIONS TO FORECLOSE MORTGAGES.—Courts of equity have inherent· original jurisdiction of actions to foreclose mortgages, unless directly or impliedly deprived thereof by statute, and may render such judgment as substantial justice requires.

2. MORTGAGES—CAN ONLY BE FORECLOSED IN EQUITY COURT.—Under Civil Code of 1913, paragraph 4113, mortgages cannot be summarily foreclosed by advertisement and sale, but must be foreclosed by action in court of competent jurisdiction, which may be inferred to mean courts of equity, which have always exercised such jurisdiction.

3. MORTGAGES—EQUITABLE RELIEF IN FORECLOSURE SUIT HELD NOT RESTRICTED BY STATUTE.—Civil Code of 1913, title 35, chapter 3, as to judgment foreclosing mortgages, method of sale under execution, and inclusion of taxes, broadens remedy, but does not restrict or limit equity court's powers to adjudicate all equities between all persons interested, some of which are expressly referred to as functions of equity by paragraph 681.

4. JURY — CONSTITUTION DOES NOT GUARANTEE TRIAL BY JURY IN EQUITY CASES.—The Constitution does not guarantee trial by jury in equity cases, especially as article 6, section 6, expressly vests equity jurisdiction in courts.

5. MORTGAGES—VENDOR'S NONFULFILLMENT OF PROMISE, INCAPABLE OF PERFORMANCE BECAUSE OF FALSE REPRESENTATIONS, DEFENSE TO ACTION TO FORECLOSE PURCHASE-MONEY MORTGAGE.—Whether vendor's unfulfilled promise that water would be put on land within

---

3. Equity rule that assumption of jurisdiction for one purpose gives jurisdiction for all, see note in **Ann. Cas.** 1912A, 803. See, also, 10 **R. C. L.** 370.

4. Conditions and restrictions which may be imposed on jury trial, see note in 98 **Am. St. Rep.** 538.

Right to jury trial of mechanic's lien foreclosure, see note in **Ann. Cas.** 1913B, 283.

General scope of constitutional provisions guaranteeing right to jury trial, see note in 1 **Ann. Cas.** 793. See, also, 6 **R. C. L.** 458.

5. See 19 **R. C. L.** 543.

given period, in time to raise crop during current season, may be relied on as defense in action to foreclose purchase-money mortgage, *held* dependent on truth or falsity of representations as to availability and financial ability to furnish sufficient supply, as it cannot be supposed that he intended the impossible.

6. BILLS AND NOTES—BURDEN ON ONE TAKING NOTE AND MORTGAGE GIVEN UNDER CONTRACT PROCURED BY FRAUD TO PROVE ACQUISITION IN GOOD FAITH, AND FOR VALUE.—Under Civil Code of 1913, paragraph 4204, burden is on bank taking note and mortgage, representing first payment under land sale contract, which mortgagor was induced to make by vendor's false representations, to prove that it took them in due course, in good faith, and for value, without notice of any infirmity in note or defect in title of one negotiating it.

7. BILLS AND NOTES—PURCHASER KNOWING NOTE WAS TAINTED WITH FRAUD NOT PROTECTED BY WANT OF KNOWLEDGE OF PARTICULARS OR NATURE THEREOF.—On question of notice or knowledge of fraud by which note was procured, it is sufficient to prove that subsequent purchaser had knowledge that it was in some way tainted with fraud, and unnecessary that he have knowledge of particulars or even nature of fraud.

8. BILLS AND NOTES—NOTE AND MORTGAGE GIVEN AS FIRST PAYMENT ON PURCHASE OF LAND CONSTRUED WITH CONTEMPORANEOUS WRITTEN CONTRACTS.—Note and mortgage and contemporaneous written contracts, evidencing purchase of land and water rights, as first payment for which they were given, must be construed together as parts of single agreement growing out of same transaction, in action on note.

9. BILLS AND NOTES—RIGHTS OF INDORSEE TAKING WITH NOTICE OF BREACH OF CONTRACT OF WHICH NOTE IS PART MEASURED BY SAME RULE AS THOSE OF PAYEE.—Rights of indorsee, taking note secured by mortgage with notice that contract, of which it is part, has been broken, so as to affect consideration of note, are measured by same rule as payee's rights.

---

6.   Who are bona fide holders of negotiable instruments, see notes in 9 **Am. Dec.** 272; 44 **Am. Dec.** 698.

Circumstances sufficient to put purchaser of negotiable paper on inquiry, see notes in 29 **L. R. A. (N. S.)** 351; 44 **L. R. A. (N. S.)** 395; **L. R. A.** 1918F, 1148. See, also, 3 **R. C. L.** 1039.

7.   See 3 **R. C. L.** 1071.

8.   Provisions in mortgage securing note as affecting negotiability, see notes in **Ann. Cas.** 1916C, 503; **Ann. Cas.** 1912D, 1. See, also, 3 **R. C. L.** 870.

10. Bills and Notes—Note Dependent on Covenants in Entire Contract Affected by Terms Thereof in Hands of Indorsee With Notice.—Note construed, not as independent of and collateral to other parts of contract of which it is part, but as dependent on covenants in entire contract, is affected by terms thereof, as fully and to same extent in hands of indorsee, taking with notice of contract, as in hands of payee.

11. Bills and Notes—Conveyance of Title to Land Held Condition Precedent to Payment of Note to Indorsee.—Maker of purchase-money note, temporary receipt for which provided that, if payee were unable to deliver title to lot, contract and note and mortgage should be canceled, could demand from whomsoever claimed payment of note, with notice of such provision, that title be presently ready for conveyance, before he could be required to pay note.

12. Vendor and Purchaser—Contract Construed as Requiring Vendor to Return Note and Mortgage on Failure to Deliver Water—"Refund."—On failure to deliver water to land sold, as required by contract requiring vendor, in such case, to refund to vendee all moneys, etc., paid by him, before payment of note given as first payment, maker could demand and receive back note and mortgage securing it; "refund" meaning to "restore" or "turn back," the identical thing, as well as to pay back, not necessarily in kind, but in value.

13. Vendor and Purchaser — Covenants Considered Dependent in Case of Substantial Doubt.—Where there is substantial doubt as to whether covenants are dependent or independent, they will be considered dependent.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Reversed.

Mr. Richard E. Sloan, Mr. C. R. Holton and Mr. Greig Scott, for Appellant.

Messrs. Armstrong, Lewis & Kramer, Mr. Martin Le Boutillier and Messrs. Breed & Burpee, for Appellee.

10.    See 3 R. C. L. 1024.

11.    See 3 R. C. L. 861.

12.    See 27 R. C. L. 454.

See 8 C. J. 196, 506, 511, 717, 738, 984; 27 Cyc. 1450, 1517, 1554, 1643; 34 Cyc. 1012; 39 Cyc. 1306, 1439.

LYMAN, J.—This action is to foreclose a real estate mortgage. The defense is fraud in the procurement of the note and mortgage, and the total failure of consideration. The case was tried to a jury until the conclusion of the evidence, when, in response to motions made by the plaintiff, the court withdrew the case from the further consideration of the jury, and rendered judgment for the plaintiff. This order was made in the following terms:

"Let the record in this case show that the motion of the plaintiff to withdraw the case from the consideration of the jury, for the reason that, this being an equity case, the verdict of the jury is merely advisory, and that there is not sufficient evidence that the plaintiff is not a holder in due course and for a valuable consideration."

The defendant bases his appeal upon the ground that he is entitled to have the evidence submitted to the jury for its consideration and verdict, and that the judgment of the court was contrary to the law and the evidence.

Upon the first ground of appeal, defendant says that this is a statutory proceeding, a law action, in which he is entitled as of absolute right to a jury trial, and that, even though it be considered in the nature of a suit in equity, he is nevertheless guaranteed by the Constitution the right to have the facts determined by a jury.

The status of this action, defendant contends, is fixed by the provisions of the statute, directing how and by what steps mortgages shall be foreclosed, and because of such statutory provisions the proceeding is without any equitable character. Chapter 3, tit. 35, Rev. Stats. of Ariz. 1913.

Courts of equity have inherent original jurisdiction of actions to foreclose mortgages and authority to render such judgment as substantial justice be-

tween the parties may require, and that jurisdiction remains until taken away by statute. There is no statute in this state which by direct provision or implication deprives the courts of such jurisdiction. *Sweeney* v. *Williams,* 36 N. J. Eq. 627.

Many of the states permit the foreclosure of mortgages by advertisement and sale, or by some other. summary method provided by the statute. At one time such a method was sanctioned by the laws of this state, but was later expressly forbidden by paragraph 4113 of the Revised Statutes of 1913, as follows:

"4113. All mortgages of real property and all deeds of trust in the nature of mortgages shall, notwithstanding any provision contained in the mortgage, be foreclosed by action in a court of competent jurisdiction."

It may properly be inferred from this section that the court of competent jurisdiction therein referred to was such court as had always from time immemorial exercised that jurisdiction.

Chapter 3, title 35, Revised Statutes of Arizona of 1913, above referred to, has provisions affecting the form of judgment, the method of sale under execution, and the inclusion in the judgment of items paid on account of taxes. It broadens the remedy which equity formerly applied. There is nothing in the statute which restricts or limits the court in affording the relief which equity formerly gave in suits for foreclosure of mortgages.

The powers of the court in this action to consider and adjudicate all equities between all persons interested in the subject matter of the action, including priority of liens, distribution of the proceeds of sale, and the preservation of the mortgaged premises through the agency of a receiver, who by the terms of our statute shall be governed by the rules of

26 Ariz.—40

equity, are all left unrestricted by the statute. These are functions of equity, some of them expressly referred to as such by our statute. Paragraph 681, Rev. Stats. Ariz. 1913.

It would be impossible for the court to apply these remedies effectively through the medium of a general verdict. Some of the states of the Union have provided for summary proceedings for the foreclosure of mortgages, either with or without court action. In most, if not in all, states, where a summary method of foreclosure is permitted by contract, or provided by statute, the right of foreclosure by suit in equity is still preserved.

Even if this action be considered as in equity, nevertheless defendant conceives that he was entitled to a jury trial. He cites the case of *Brown* v. *Greer*, 16 Ariz. 215, 141 Pac. 841, in which there is to be found a *dictum* to the effect that the Constitution of the state guarantees trial by jury in all cases, without any distinction of law or equity. That is not the law of this state, and has never been. The organic act, supported by a number of decisions of this court, both before and since statehood, is in conflict with it. The Constitution does not assume to create any such right. On the contrary it preserves and perpetuates equity jurisdiction, expressly vesting it in the courts of the state. Ariz. Const., art. 6, § 6.

Another ground upon which defendant bases his appeal is that the judgment is at variance with the law and the evidence.

The note and mortgage, the subject of this action, represented the first payment under a contract for the purchase of a tract of 100 acres of land, with appurtenant water right from one Post. The defendant was induced to enter into this contract upon representations by him that a sufficient supply of water for the irrigation of this land was available, and that

he had financial means to develop the water and put it on the land. Acompanying these representations was the promise that such power and ability would be expended by him so that the water would be actually put upon the land within a given period, and in time to raise a crop during the current season, and within six months from April, 1919. Though this was merely a promise, its effect upon the present controversy depends upon the truth or falsity of the representations which made the fulfillment of that promise possible.

This land was desert in character. Without water to irrigate it sufficiently to raise crops, it was practically valueless. It was sold for farming purposes. The only source of water supply was from wells sunk to the level of an underground stratum of water. The volume of water which could possibly be derived from that source was for the most part undeveloped, and the amount available rested upon the estimate of engineers who had made an examination of the supply. The evidence bearing upon this matter contained in the record is meager, but without conflict. An engineer, who was apparently relied upon by the plaintiff, estimated the possible supply of water available for this tract as sufficient to irrigate 10,000 acres of land.

The representations made by Post as to the available supply of water and his pecuniary ability to develop it were both untrue, as he must have known. His promise to place water upon the land within six months was made without reasonable expectation, and therefore without intention of fulfilling it. It is not to be supposed that he intended the impossible. *Lentz* v. *Landers,* 21 Ariz. 117, 185 Pac. 821.

There was not available from any source, so far as disclosed, a sufficient supply of water for the adequate irrigation of more than 10,000 acres. Post

was without financial means with which to develop such water as was available. Neither during the season of 1919, nor subsequently, was there any development of a supply of irrigation water sufficient to raise crops upon any considerable portion of this land. He never had, nor was he able to procure, sources of water supply from which the land of defendant could be irrigated.

Though not admitting the fraud which tainted the original transaction, the plaintiff urges that, even though such fraud existed, it received the note and mortgage without notice of any such infirmity, in due course, for value, and is therefore unaffected by the original transaction between Post and Davis, beyond what appears from the face of the note and mortgage.

The plaintiff, First National Bank of Oakland, took the note and mortgage as collateral security for the payment of a loan to Post, made in April, 1920. The mortgage did not cover the land involved in the contract but another tract in a different locality.

Between the time of the execution of this note and mortgage, and its negotiation in April, 1920, Post had constant business relations with the plaintiff bank in the course of which the bank was engaged in financing Post and his project for the development of the land. It had made repeated and minute investigations of the so-called Post project, including a number of visits to the land by its agent, and a close and careful scrutiny of the land itself, possible sources of water supply, the contract relationships between Post and those with whom he had contracted to sell the land, the source and character of whatever title he held to both land and water supply, and such progress as was made toward developing water for the irrigation of these lands. Interest and good business judgment dictated that no detail of the busi-

ness which Post was carrying on in the sale and development of these lands should escape the attention of the plaintiff. The written reports, which were made by the agents of the plaintiff from time to time before the transfer of the note and mortgage sued on, indicate that as early as February, 1920, they were intimately acquainted with every phase and detail of the so-called Post project, which included the lands sold to defendant, as well as the resources and credit of Post. It was then known to the plaintiff that these lands were being sold upon contract, which involved the development and supply to the lands of sufficient water for their irrigation; that they were bought for agricultural purposes; that they were desert in character and valueless without water in sufficient volume for their irrigation; that the estimate made of the amount of land which could be watered from any known source of supply did not exceed 10,000 acres, and that upwards of 14,000 acres had been sold by Post under contract to supply it with water for irrigation; that Post did not own the land nor the sources of water supply, and had no means with which to buy them; that he had only a small interest in his so-called project; and that there was but a remote and uncertain prospect that the buyers of Post project lands would ever receive any considerable return for their purchase money.

The circumstances under which the note and mortgage were executed, and the representations made by Post to induce Davis to enter into these contracts, are undisputed. The representations made by Post were known to him to be false, and were strong inducements to Davis to enter into the contract. With the evidence in this state, the burden fell upon the plaintiff to prove that it acquired title to the note and mortgage in due course, that it took them in good faith and for value, and that at the time it had no

notice of any infirmity in the note or defect in the title of the person negotiating it. Paragraph 4204, Rev. Stats. Ariz. 1913; *Lentz* v. *Landers,* 21 Ariz. 117, 185 Pac. 821; *Ozark Motor Co.* v. *Horton* (Mo.), 196 S. W. 395; *Navajo-Apache Bank & Trust Co.* v. *Wakefield,* 20 Ariz. 335, 180 Pac. 529; *People's Nat. Bank* v. *Taylor,* 17 Ariz. 215, 149 Pac. 763; *Arnd* v. *Aylesworth,* 145 Iowa, 185, 29 L. R. A. (N. S.) 638, 123 N. W. 1000.

The circumstances of the negotiation of the note to the plaintiff are undisputed. Neither is there any dispute concerning the sources of information which were open to the plaintiff. The agent of the plaintiff admits substantial familiarity with the contents of the contract of purchase. He admits intimate knowledge of the conditions of the Post project at the time the note was negotiated, and familiarity with all of the details of Post's business.

When it becomes established that the note was procured by fraud, it is sufficient on the question of notice or knowledge of fraud to prove that the purchaser of the note had knowledge that the note was in some way tainted with fraud. It is not necessary that he have knowledge of the particulars of the fraud or even of the nature of the fraud. 1 Daniel on Negotiable Instruments, 799; *Link* v. *Jackson,* 164 Mo. App. 195, 147 S. W. 1114; *Studebaker Mfg. Co.* v. *Dickson,* 70 Mo. 272; *Henry* v. *Sneed,* 99 Mo. 407, 17 Am. St. Rep. 580, 12 S. W. 663; *Ozark Motor Co.* v. *Horton* (Mo. App.), 196 S. W. 395.

The written contracts which evidence purchase by defendant, and upon the first payment of which the note and mortgage were given, contained these provisions:

"If the undersigned is unable to deliver title to lot ——, this contract shall be canceled, and the note and mortgage first above referred to shall be can-

celed, and delivered to purchaser, and there shall be no further liability from either party hereto to the other party. . . .

"That in event vendor be unable to deliver deed and marketable title, or either thereof, as in this contract receipt provided, or shall fail to cause water to be delivered as herein provided, vendor shall upon such failure, or either thereof, repay and refund to vendee' all moneys and other things of value, or their value herein stated, and theretofore paid by him to vendor for or on account of said contract receipt. . . .

"That within six months next after the giving and acceptance of this contract receipt, water shall be ready for delivery to vendee under the terms of said water contract."

The terms of these contracts were known to the plaintiff.

The note and mortgage were executed contemporaneously with the written contracts, the temporary receipt, contract of purchase, and water right, from which the foregoing excerpts are taken. Altogether these instruments constitute the agreement between Post and Davis. They are all to be construed together as parts of a single agreement growing out of the same transaction. *Rogers* v. *Smith,* 47 N. Y. 324; *Hunt* v. *Livermore,* 5 Pick. (Mass.) 395; *Thomas* v. *Page,* 3 McLean, 369.

In any action upon the note by the payee, the rights of the parties would be determined in the light of all parts of this contract. If at the time of the action the accompanying contracts had been broken, so as to affect the consideration of the note, that would constitute a ground of defense to a recovery upon the note. The rights of an indorsee depend upon notice. If he takes the note with notice that the contract, of which the note is a part, has been already broken, his rights would be measured by the same rule as the rights of the payee. If at the time the bank took this note and mortgage, April 12, 1920, it had notice

that Post had broken his contract so as to affect the note, such breach would be a good ground of defense in this action.

Undoubtedly the bank knew of these contracts and their terms. As early as September, 1919, it had made an exhaustive examination of Post's credit, his assets and liabilities, and the project which he was attempting to devolop, where the land in question was located. This investigation was continued and supplemented by a more thorough examination of the same things early in the following February.

We must conclude that the agreement to furnish this land with water in time for the crop of 1919, or within six months from April, 1919, had been broken, and that such breach was not unknown to the agents of the plaintiff before April 12th, the date upon which the plaintiff became the indorsee of this note.

If, however, this note be construed not as independent of and collateral to the other parts of the contract, but as dependent upon the covenants contained in the entire contract, the rights of the indorsee who takes with notice of such contract are measured by a different rule. The note in his hands is affected by the terms of such contract as fully, and to the same extent, as though it were in the hands of the payee. *Simpson* v. *Van Laningham,* 267 Mo. 286, 183 S. W. 324; *Citizens' Bank* v. *Kreigshauser,* 211 Mo. App. 33, 244 S. W. 107; *American Gas etc. Co.* v. *Wood,* 90 Me. 516, 43 L. R. A. 449, 38 Atl. 548; *Hill* v. *Huntress,* 43 N. H. 480; *Allen County State Bank* v. *Central Stone Co.,* 205 Mo. App. 588, 226 S. W. 665.

That provision in the temporary receipt that, "if the undersigned is unable to deliver title to lot ——, this contract shall be canceled, and the note and mortgage first above referred to shall be canceled and

delivered to the purchaser," undoubtedly holds the obligation of the note in abeyance pending the fulfillment of that part of the contract. The maker of the note is entitled to demand from whosoever claims payment of it with notice of this provision in the contract, that the title to the land in question shall be presently ready for conveyance to him, before he shall be required to pay the note. The ability at least to convey title is made a condition precedent to the payment of the note.

It is not pretended that Post, at the time this action was commenced, or at any time, had title to this land. On the contrary, it affirmatively appears in the record that long before this action was commenced Post was bankrupt, and that practically all of the water-bearing land included in this project stood in the name of a person who was a stranger to this contract.

There is another provision in this contract to the effect that upon failure to deliver water to the land within six months from its date, April, 1919, the vendor shall "repay and refund to the vendee all moneys, and other things of value, or their value therein stated, and theretofore paid by him to vendor for or on account of such contract receipt." The relationship of the note and mortgage to this provision is not so clear. It has been held that an agreement to refund the amount paid upon a promissory note does not make the payment of the note dependent upon the performance of the contract, but on the contrary expressly recognizes the obligation of the maker of the note to pay the note when due, with recourse to recover it back.

The clause, shall "repay and refund to vendee all moneys and other things of value, or their value as herein stated, and theretofore paid by him to vendor," is susceptible of the construction that either the note and mortgage shall be returned, or, if paid

before the breach, the moneys so paid shall be refunded. The word "refund" means both to pay back, not necessarily in kind, but in value, but it also means to "restore" or "turn back" the identical thing.

We conclude that the import of this part of the contract is that, if the contract is broken before the note is paid, the maker of the note is entitled to demand and receive back his note and mortgage. This construction is borne out by the fact that the note does not mature for three years, unless at the election of the holder, and, because of failure to pay interest, it be declared due at the end of one year, and the breach of the contract under consideration might occur at the end, or at any time after six months. Where there is substantial doubt as to whether covenants are dependent or independent, they will be considered as dependent. *Simpson* v. *Van Laningham,* 267 Mo. 286, 183 S. W. 324.

It appears, therefore, that the bank took this note and mortgage with notice that it depended upon the fulfillment of this contract before the maturity of the note, and that, if the contract were broken before that time, it was subject to cancellation.

For the reasons stated in this opinion, the judgment will be reversed, and in its stead judgment is hereby rendered for the defendant, dismissing the plaintiff's action at its cost.

MCALISTER, C. J., and ROSS, J., concur.