[Civil No. 2913. Filed December 15, 1930.]

[293 Pac. 973.]

THOMAS J. SMITH and JENNIE SMITH, His Wife, Appellants, v. LATOURETTE–FICAL COMPANY, a Corporation, Appellee.

Messrs. Curley & Pattee, for Appellants.

Messrs. Mathews & Bilby and Mr. Norman S. Hull, for Appellee.

ROSS, J.—This is an action by the Latourette-Fical Company, assignee, to recover on a promissory note of the defendants Smith, dated November 17, 1919, and payable to Edwin R. Post in five equal installments of $720 each on July 1, 1921, 1922, 1923, 1924 and 1925, with interest at 6 per cent., and to foreclose a mortgage, of even date, on 40 acres of land and the pumping plant, equipment, and improve-

ments thereon and appertaining thereto, given to secure payment of note. The note and mortgage were assigned to plaintiff and recorded before maturity, to wit, on September 4, 1920, for a valuable consideration.

The defense consists of a counterclaim by way of recoupment and set-off. In substance it is alleged in defendants' answer that 15,000 acres of desert land, located in Pima county, owned or claimed by one Edwin R. Post, were by him subdivided into farm units for the purpose of sale to whoever would buy; that as a part of his project he was to develop a water system and sell the land with a permanent water right; that on November 17, 1919, defendants purchased of Post a 40-acre unit of said land, agreeing to pay therefor $6,000; that they paid at said time $1,500 cash, gave their note for $900 payable March 15, 1920, which was paid when due, and their note, being the note and mortgage sued on, for the balance; that as a part of said transaction a water company, organized and dominated by Post, agreed to construct an adequate irrigation system by and through which defendants would be supplied with sufficient water to irrigate the arable and irrigable portions of said 40 acres, beginning the delivery thereof within six months after November 17, 1919, and continuously thereafter as needed, and defendants agreed to pay for water at prices specified in contract; that in October, 1920, Post and his water company being insolvent and unable to carry out the contract to furnish water, plaintiff and other creditors of the project took it over through court proceedings and thereafter caused it to be sold to the Pima Farms Company, a corporation organized by the creditors for that purpose; that from October, 1920, when the project was so taken from Post, until November, 1921, it was under the control and management of a receiver appointed on application of the creditors,

and thereafter the Pima Farms Company. It is alleged that the contracts between Smith and Post covering the sale and purchase of land were but a single transaction, of which the note and mortgage are a part, and that plaintiff, when it took the assignment of them, had full notice and knowledge of the contents of said contracts. It is then alleged that defendants, during each of the years since they went upon the land, have endeavored to raise crops thereon but have been unable to do so because Post and his water company while in control of the project, and the receiver and Pima Farms Company, while in control thereof, have failed to furnish them sufficient water for the irrigation of the land.

The damages laid are for the years 1924, 1925, 1926, 1927 and 1928, while the Pima Farms Company was in charge of the project, and amount to $5,940.

The answer contains other allegations, but we do not state them because, as we view them, they are either of evidentiary matter or conclusions of the pleader.

The right to set off damages was denied the defendants and judgment was entered for plaintiff for the full face of the note and the mortgage ordered foreclosed. Defendants have appealed.

The questions presented for our determination arise from the rulings of the court rejecting evidence offered by defendants in support of the defense alleged in their answer. We observe that the note sued on is negotiable in form and that it was assigned to plaintiff for value before due. Section 3728 of the Revised Code of 1928 provides:

"An assignment of a chose in action shall not prejudice any set-off or other defense existing at the time of the notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration before due."

One of the questions, therefore, is whether the note was transferred in good faith. If the plaintiff is a holder in due course, no defense available to the makers of the note by way of recoupment or set-off can be interposed as against the plaintiff. The assignee of a negotiable promissory note may, however, acquire it before maturity, under such circumstances, sometimes, as to deprive it of its negotiability, in which case the makers can interpose against it any defense they may have were it being pressed for collection by the payee.

It is the contention of defendant that the covenant to furnish sufficient water to irrigate their land was not only a moving inducement to them to purchase the land, but was, when plaintiff acquired the note, incomplete, unfinished, and unexecuted. In other words, that such covenant to furnish water was continuous, requiring performance from year to year, for an indefinite period or number of years, as water was needed, and that plaintiff had full knowledge thereof when it purchased the note and is not, therefore, a good-faith holder.

The defendants rely upon breaches of this covenant subsequent to the date of plaintiff's acquisition of the note. It is not alleged in their answer that plaintiff bought the note with knowledge that the promise to furnish water had been breached. The rule, then, that an assignee, for value, before maturity of a negotiable promissory note, given for an executory promise, takes it, if he knows that such promise has been breached, subject to defenses open to the maker against the payee, has no application. But if the plaintiff knew when it acquired the note and mortgage that they entered into and formed a part of the consideration for the executory promise to furnish water, it seems, under well-considered authority, that the note in plaintiff's hands is subject

to any defenses available to the makers as against the payee.

The facts pleaded and the evidence offered to prove plaintiff's knowledge bring the case within the exception as stated in 3 Ruling Case Law, 1067, section 273, as follows:

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the indorsee of the character of a holder in due course, unless he also has notice of the breach of that agreement or contract. . . . Of course if the transferee had knowledge of the breach of contract, or warranty before taking the instrument the defense may be interposed. And on the principle that several instruments made at one and the same time, and having relation to the same subject-matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties, it has been held that an agreement made at the time of the execution of a note, forming its real consideration, and to be performed before its maturity, is a part of the same contract, and, between the original parties to the note, cannot be enforced until the agreement is performed; and that a purchaser of such note before maturity, and before the time of performance of the agreement, with notice and knowledge of its relation to the note, is bound by it the same as if it were attached to the note or written upon the same piece of paper."

That all of the agreements between Post and the defendants, including the note and mortgage and the covenant to furnish water, constituted the agreement, and must be considered together as a single agreement, was decided in *Davis* v. *First National Bank of Oakland,* 26 Ariz. 621, 229 Pac. 391, and in *Pima Farms Company* v. *McDonald,* 30 Ariz. 82, 244 Pac. 1022.

The court erred in not permitting defendants to introduce evidence showing plaintiff's familiarity

with the terms of the contract between Post and the defendants at the time it acquired the note and mortgage, but for reasons hereafter set forth the error was harmless.

It will be noted that the damages claimed are for a failure to furnish defendants sufficient water during the years 1924, 1925, 1926, 1927 and 1928, long after Post had faded from the picture and during the time the project was owned and controlled by the Pima Farms Company. Ownership and control of the project had been by legal process transferred from Post to the company and the latter had assumed the obligation of the water contract, and if it failed to deliver to defendants sufficient water to irrigate their land, it, and not Post, unless it was his representative, was amenable in damages for such failure. If Post had sold the project directly to the Pima Farms Company, and the defendants and the new owner had continued to operate under the old water contract, clearly the defendants' remedy for a breach thereof would be against the Pima Farms Company, and not Post. We do not think the rule should be different because the Pima Farms Company acquired the project through legal process. It appeared in the trial that the water contract had been considerably changed and modified by a written agreement between the defendants and the Pima Farms Company, thus evidencing an intention on the part of defendants to look to the Pima Farms Company to furnish them water. Under the modified agreement the Pima Farms Company agreed thereafter to furnish water and defendants agreed to pay such company for the water at a specified price. The defendants, instead of pursuing their remedies against Post by way of rescission or damages, when he defaulted in his contract, elected to affirm their contract as an entirety and to accept the Pima Farms Company's agreement to furnish water. They remained upon the land and

continued to try to farm it, relying upon the promise and ability of the Pima Farms Company to deliver them water sufficient to do their farming. The damages they suffered by reason of the inability or neglect of the Pima Farms Company to supply them with water, running over a series of years, they now seek to have applied as a credit upon the note.

Section 3784 of the Revised Code of 1928 provides that in an action for any debt the defendant may plead thereto any counterclaim which he may have against the plaintiff, subject to the limitations prescribed in section 3785. This latter section provides that the counterclaim must be an existing one in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must be a cause of action arising out of the contract or transaction pleaded in the complaint, or connected with the subject of the action.

Under the facts, as we have heretofore determined, the plaintiff occupies the same position with reference to the note that Post would occupy if he were trying to collect it. If, therefore, the damages here sought to be set off against the note could be recovered in an action against Post, they are available in recoupment as against the plaintiff. It is clear to our mind that the damages defendants claim to have sustained were for breaches of the contract by the Pima Farms Company, and that no recovery thereon could be had against Post, the payee of the note. The counterclaim pleaded does not exist in favor of the defendants against the payee, and cannot be used as a set-off or counterclaim against the plaintiff.

"Mutuality is essential to the right of set-off. And to authorize a set-off at law the debts must be between the parties in their own right." 23 Cal. Jur. 256, § 31.

Besides, the counterclaim arises out of a contract or transaction other than the one out of which the

note and mortgage emanated. It arose out of a contract between the Pima Farms Company and defendants. It is not connected with the subject of the action, to wit, the note and mortgage. It does not come within the description of a counterclaim as defined by section 3785, *supra*.

Defendants also claim that the terms of the mortgage are such as to convert the note into a nonnegotiable instrument. Since if that were true it would make no difference, it is not necessary that we pass on the question.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.