[Civil No. 2375.    Filed April 19, 1926.]

[244 Pac. 1022.]

# PIMA FARMS COMPANY, a Corporation, Appellant, v. J. M. McDONALD and MARY A. McDONALD, His Wife, Appellees.

1. VENDOR AND PURCHASER—CONTRACT FOR SALE OF DESERT LAND WILL BE CONSIDERED TOGETHER WITH SEPARATE AGREEMENT TO FURNISH WATER.—Contract for sale of desert land will be considered together with contract to furnish water, executed at same time, as being contract for sale of land with water to irrigate it.

2. VENDOR AND PURCHASER.—Failure to furnish water to irrigate desert land, as per contract executed in connection with contract for sale of land, *held* breach of contract for sale as respects purchaser's right to recover price paid. ·

3. VENDOR AND PURCHASER—PURCHASER OF DESERT LAND, HAVING ABSOLUTE AGREEMENT TO FURNISH WATER, SUBJECT TO PROVISION THAT COMPANY SO AGREEING BE EXCUSED FROM LIABILITY IF FAILURE BE DUE TO CERTAIN ENUMERATED CAUSES, HELD NOT TO HAVE BURDEN OF SHOWING FAILURE WAS NOT DUE TO SUCH CAUSES IN ACTION TO RECOVER PRICE.—In action to recover purchase price of desert land for breach of absolute agreement to furnish water to irrigate it, but containing clause relieving company from failure if due to certain enumerated causes, burden *held* not on purchaser to show that failure to furnish water was not due to causes enumerated.

4. VENDOR AND PURCHASER—IN ACTION TO RECOVER PRICE OF LAND FOR BREACH OF AGREEMENT TO FURNISH WATER, PURCHASER OF INSOLVENT WATER COMPANY'S PROPERTY, NOT BINDING ITSELF TO CARRY OUT AGREEMENTS, HELD NOT ENTITLED TO ASSERT PROVISION THAT PURCHASER BE LIMITED TO ACTION FOR DAMAGES FOR BREACH.—In action to recover price of desert land for breach of agreement to furnish water for irrigation purposes, purchaser of property of insolvent water company at receiver's sale, not binding itself to carry out terms of agreement with purchasers of land, *held* not entitled to set up clause in sale contract purporting to preclude any relief save damages for breach.

5. DEEDS.—Reservation in deed to desert land of right to well sites *held* to be absolute, equitable interest upon selecting and constructing well, independent of any right to rescind or recover damages for breach.

6. DEEDS.—Generally benefit of defect of description of exception or reservation accrues to grantee.

7. DEEDS.—Where parcel of land is excepted from larger tract conveyed, uncertainty of description in exception is cured, if selection is made within reasonable time.

8. VENDOR AND PURCHASER—EXCEPTION OF WELL SITES AND RIGHTS OF WAY IN DEED TO DESERT LAND, UNDER WHICH ONE SITE WAS SELECTED AND WELL CONSTRUCTED, HELD NOT VOID FOR UNCERTAINTY.—Exception of well sites, rights of way, etc., in contract for sale of desert land, with agreement to furnish water to irrigate it, and under which one well site had been selected, *held* not void for uncertainty, and therefore well could not be included in sale of land to satisfy lien of purchaser rescinding contract.

See (1) 39 *Cyc.*, p. 1296, n. 73. (2, 3) 39 *Cyc.*, p. 2005, n. 58, p. 2065, n. 76. (4) 39 *Cyc.*, p. 2031, n. 75 New. (5) 18 **C. J.**, p. 345, n. 40 New. (6, 7) 18 **C. J.**, p. 344, n. 20 New, p. 348, n. 84, 85. (8) 39 *Cyc.*, p. 1227, n. 64 New.

APPEAL from a judgment of the Superior Court of the County of Pima. F. C. Struckmeyer, Judge. Judgment modified and affirmed.

Messrs. Kingan, Campbell, Conner & Darnell, for Appellant.

Messrs. Curley & Pattee, Mr. George O. Hilzinger, Mr. Edwin F. Jones and Mr. Milton M. Cohan, for Appellees.

McALISTER, C. J.—In June, 1919, Edwin R. Post and J. M. McDonald and Mary A. McDonald, his wife, entered into an agreement by which Post agreed to sell and the McDonalds to buy certain real estate. About three years later the purchasers, claiming that Post had not complied with his contract, brought this action, the purpose of which was to have the court declare the agreement rescinded, to recover the pur-

6. See 8 **R. C. L.** 1094.
7. See 8 **R. C. L.** 1097.

chase price of the land together with the value of the improvements placed thereon by them, and to have a lien on the premises for these sums declared and foreclosed. The Valley Farms Water Company and the Pima Farms Company, corporations, were also made parties defendant. The court granted plaintiffs the relief prayed for, and the Pima Farms Company alone appeals.

Prior to June 5, 1919, Edwin R. Post began the promotion of an irrigation enterprise which came to be known as the "Post project." He held title to several thousand acres of land in Pima county, Arizona, which he divided into small tracts and offered for sale for farming purposes. The land was desert and necessarily useless for agricultural purposes without water; hence his plan included the furnishing of water to irrigate all that was sold, and his method of doing this was through a corporation organized by him known as the Valley Farms Water Company. It was contemplated that the land in most instances would be paid for in installments, and in his contracts of sale, which were denominated "Purchaser's Contract-Receipt," he agreed to convey title upon payment of the purchase price, and within a certain period thereafter (in the case of the McDonalds, six months) to have water ready for use on the land upon the terms and conditions set forth in a water contract executed at the same time by the purchaser and water company. It was sought to keep the plan for disposing of the land and that for furnishing the water for its irrigation separate and distinct; Post agreeing to convey the former, and the Valley Farms Water Company to supply the latter.

On June 5, 1919, Post and the McDonalds entered into one of these agreements, the number of acres sold being ten, and the consideration $1,500 to be paid

in installments, the last one being due in 1925, and at the same time the Valley Farms Water Company and appellees executed one of the water contracts which obligated that company to furnish the water for the irrigation of this land. Appended to the agreement of sale was a blank form of deed to be executed and delivered by the vendors to the vendees, and also a blank form of mortgage to be used in case the vendors chose to deed the land and take from vendees their note and mortgage in lieu of the contract receipt. The McDonalds went into immediate possession, and on September 19th thereafter paid the purchase price in full; later receiving from Post the deed which they caused to be recorded in the office of the county recorder.

In 1920 they farmed the land, or at least attempted to do so, through a tenant, but, because of their inability to get sufficient water for irrigation, their crop was a failure. By July 1st of that year they had placed upon the premises improvements of the value of $1,700, but they made no effort to cultivate the land after the expiration of that season, and therefore neither asked for nor received any more water, though the record discloses that they could have had all they needed, but at $5.75 per acre-foot per annum instead of $2.25, the price called for in paragraph 2 of the contract with the water company. It was, however, according to appellant, within the terms of paragraph 5 of that contract which provides that the company shall be allowed to earn a net profit of six per cent, and that it shall be permitted to increase its water rates if necessary to do this.

In September, 1920, receivers for Post and the Valley Farms Water Company were appointed by the United States District Court, and in 1921 the assets of both were sold to one Lee as trustee, who in De-

cember of that year conveyed them to the appellant, Pima Farms Company. The receivers and a committee representing some of the land owners under the project had some negotiations regarding the furnishing of water, but appellee J. M. McDonald testified that he had nothing to do with the committee, and was not represented by it.

In April, 1920, Post, or the Valley Farms Water Company, constructed a well upon the land occupied by appellees, but whether with the consent of appellees is in dispute, J. M. McDonald testifying that he did not know there was a well site on their land, and that he objected, not only to the location of the well, but to its construction at all upon their premises, while the testimony introduced by appellant was that they objected to the location only. The well was constructed in pursuance of the provisions of paragraph 13 of the contract with the water company, which is in the following language:

"13. The purchaser, in addition and as a further consideration herein, agrees to grant and hereby does grant and give, and shall execute and deliver his bargain and sale deed therefor, unto the company, without cost or further consideration on its part, title in fee simple for well sites 100 feet square, and the necessary rights of way for the construction and maintenance of its main and sub-canals, and to use purchaser's laterals, flumes, and pipe lines, and to enlarge the same, and to construct and maintain waste ditches, together with such other and further rights of way and easements as and at the times the company may deem it convenient or essential to the successful conduct and maintenance of such irrigation system, in and over and upon the whole or any portion of the above-described lands."

Paragraph 21 of the same contract contains the following language:

"21. The purchaser shall not be entitled, under any circumstances whatever, to declare, or have declared, this contract invalidated or annulled, but, if he shall be damaged through any violation by the company of this contract, he shall be entitled to all proper redress in damages against the company in any court of competent jurisdiction."

The case was heard by the court without a jury and it held that appellees were entitled to and had rescinded both the contract of sale and the one to furnish water; that they were entitled to receive back the $1,500 purchase price and the $1,700 paid for improvements, both with interest, and to the establishment of a lien on the premises for said sums, together with the foreclosure of the same. It is from this judgment that the appellant, Pima Farms Company, appeals.

Several errors are assigned; the first one being that the court erred in rescinding the purchase and water contracts because it was not shown that either of them had been breached by Post, the Valley Farms Water Company, or appellant. This presents, first, the question whether, under the record, there was a breach of these agreements. They were executed at the same time, June 5, 1919, and the sale contract obligated Post to cause the Valley Farms Water Company to construct wells and other equipment in the way of pipe-lines, flumes, etc., for the purpose of furnishing water in accordance with the terms of the water contract, and fixed six months thereafter as the time in which the water would be ready for delivery. The two agreements, therefore, should be considered together, and, viewed in this light, they constitute a contract for the sale of land with water to irrigate it; the water to be furnished indefinitely thereafter in accordance with the terms provided

therein. This court said, of similar contracts and a note and mortgage like those that would have been used in this instance, had not appellees paid for their land before it became necessary to do so, that "they are all to be construed together as parts of a single agreement growing out of the same transaction." *Davis* v. *First National Bank of Oakland,* 26 Ariz. 621, 229 Pac. 391.

The land is desert, and could be made valuable for farming only by irrigation, but there is no stream from which surface water could be secured. There is, however, a supply of underground water which could be obtained by pumping, but this necessitated the construction of wells and canals and the installation of pumps, pipe-lines, flumes, etc. All this appellant contracted to do, or have the Valley Farms Water Company do, and appellees agreed to pay so much per acre-foot each year for the water furnished them. This contract was executed June 5, 1919, and it provided that water would be ready for use within six months from that date. Relying upon this, appellees attempted to farm their land in 1920, but were unable to obtain sufficient water, and their crop failed completely. The undertaking to furnish water for irrigation was the very essence of the agreement, the foundation upon which it, and in fact the whole Post project, rested, the land being worthless for farming without water, and the failure to fulfill it in 1920, as a result of which no crop was grown that year, necessarily constitutes a breach, unless such failure was excused by certain other provisions in the agreement relieving the company from liability for failure to furnish water when such failure is due to any of the causes therein enumerated, such, for instance, as drought, failure of water strata, litigation, damage by flood, etc. Appellant contends that, before such fail-

ure can be held to be a breach, appellees must allege
and prove that it was not excused by any of these, and
that it has wholly failed to do so. This contention
would be correct, if the agreement to furnish water
were a conditional one; for instance, if it obligated
the water company to furnish water, provided it was
able to develop it. *Gause* v. *Pacific Gas & Electric
Co.,* 60 Cal. App. 360, 212 Pac. 922. Under such cir-
cumstances it would be necessary to allege and prove
that it was able to develop it, just as it was held
in *Van Buskirk* v. *Kuhns,* 164 Cal. 472, Ann. Cas.
1914B 932, 44 L. R. A. (N. S.) 710, 129 Pac. 587, that
a complaint against the maker of a note promising to
pay it "whenever he should be able to do so" should
allege the debtor's ability to pay. But in the case at
bar the promise is more than a conditional one; it is
an absolute promise to furnish water for appellees'
land, which, of course, means in sufficient quantities
for farming purposes, and the clauses excusing per-
formance of this undertaking and relieving from lia-
bility for failure to fulfill it were inserted for the
company's benefit, and merely afford it a defense
when it can show that its failure was due to any one
of them. It was not necessary that appellees allege
and prove that the company was not excused by any
of these exceptions; they were not required to assume
the burden of proving a negative because it was not
a condition precedent. *Strauss* v. *United Tel. Co.,*
164 Mass. 130, 41 N. E. 57; *Marlor* v. *Texas & P. Ry.
Co.* (C. C.), 19 Fed. 867; *Fike* v. *Stratton,* 174 Ala.
541, 56 South. 929.

Just why the company did not furnish the water
was a matter peculiarly within its knowledge, and, if
its failure was due to any of these contractual excep-
tions it could easily have made proof of that fact,
whereas appellees would doubtless have been com-

pelled to use someone connected with the company as the source of their information, had they attempted to prove that the failure was not thus excused. Under such circumstances the burden of proof is upon the party relying upon the excepted clauses as governing his action; the other party having made a *prima facie* showing by proving a breach of the principal undertaking. *Fike* v. *Stratton, supra; Rogers* v. *Brooks,* 105 Ala. 549, 17 South. 97. It follows, therefore, that the contract was breached, and that appellees were entitled to redress either through rescission or an action for damages.

The water contract provides that the purchasers shall not, under any circumstances, be entitled to declare it invalidated or annulled, but, in case they are damaged through any violation of its terms by the company, they shall be entitled to all proper redress in damages against the company in any court of competent jurisdiction, and appellant contends that this remedy is exclusive, and hence denies appellees the right of rescission. The latter argue, however, that such a provision is against public policy and void, but, if it were not, that appellant is not in a position to avail itself of it, for the reason that it was inserted in the contract, for the benefit of Post or the water company, and, when appellant acquired the insolvent's property at the receiver's sale, it did not take the water company's place in the contract or bind itself to carry out the terms of that agreement. They contend that only a novation, or a contract embodying the same terms and conditions, would have this effect, and this contention is not controverted by appellant. Under such a view this provision was not available to the latter as a defense to an action for rescission, though it would have been to Post or the water company.

Being unable to invoke it in aid of the contention that appellees were limited to an action for damages, rescission was justified, so far as appellant was concerned, unless the other matters urged stood in the way, though, as we see it, it is unnecessary to determine whether they did or not. The breach of the undertaking to furnish water was committed by Post and the water company, and rescission of the contract of purchase could only be and was as to Post, the person from whom the land with its appurtenant water right was bought. Appellant had no interest in that particular tract of land. It had been paid for and a deed to it delivered before the breach was committed or appellant had become the owner of the equipment installed for the purpose of watering it. And while, as appellees contend, appellant was a stranger to the contract, it was interested to the extent of furnishing water for the irrigation of appellees' land, but it could have done this as well under the ownership of one person as another; hence, it was immaterial to it, so far as furnishing the water was concerned, whether appellees retained it, sold it, or rescinded the contract of purchase and caused it to revert to their vendors.

Appellant does claim, however, that the water company had reserved one hundred feet square of the land as a well site or that appellees had agreed to reconvey this much of it for such a purpose, but, after holding that appellees were entitled to rescind, to recover the purchase price, together with the value of the improvements, and to have a lien on the premises for these sums, the court ordered that such lien be foreclosed and the premises sold to satisfy it, the decree making no exception of the well and well site. Appellees, it contends further, were never the owners of this one hundred square feet, and, regardless of its effect upon

the remainder of the ten acres, their rescission had no bearing whatever upon the well site; hence the court erred in fixing a lien thereon and ordering it foreclosed.

Appellant's right to the well site is based largely upon paragraph 13 of the water contract, quoted above, and the acts of the parties thereto in reliance upon it. This paragraph provides that:

"The purchaser, in addition and as a further consideration herein, agrees to grant and hereby does grant and give, and shall execute and deliver his bargain and sale deed therefor unto the company without cost or further consideration on its part, title in fee simple for well sites one hundred feet square, and the necessary rights of way for the construction and maintenance of its main and subcanals."

Attached to the contract of purchase, which was executed at the same time as the water contract, was a blank form of deed to the ten acres to be executed by Post and wife upon payment of the purchase price and delivered to the McDonalds, and it specifically states that it was executed to and accepted by the vendees subject to the covenants, terms, reservations, restrictions, conditions and agreements set forth in the water contract. And the contract of purchase expressly provides that it conveys no greater rights in and to the land than the restrictions in this blank form of deed carry or convey, and that all the rights, privileges and uses under the conditions of the deed reserved generally therein, and those reserved to the water company especially, were thereby reserved to the vendors pending the carrying out of the agreement and the execution and delivery of the deed. Appellees did not convey a well site, but the water company treated the foregoing provisions as reserving one, or as conveying or agreeing to convey one, and

selected the site and constructed the well in the spring of 1920 at a cost of approximately $2,500; it being completed in June and used during a part of that season.

It is claimed by appellees that they did not know that the contract provided for a well site on their land, and that they protested against the well's being placed there when the site was selected and the work started, but there was no basis for this unless, as contended by appellees, paragraph 13 is void for want of certainty, because the effect of this provision and the water company's actions thereunder was to create in the latter an equitable interest in the well site, and the fact that there was a breach of the agreement to furnish water after this right had vested did not defeat it. It was definite and fixed after the site had been selected and the well constructed pursuant to the contract, and, while it was subject to execution, the same as any other property owned by the water company, the latter's continued ownership of it did not depend upon its fulfilling its undertaking to furnish water. Its interest, though equitable, having become absolute, specific performance of the agreement to convey the legal title could have been had by the water company. The deed of Post and wife to appellees did not describe the parcel of land intended to be conveyed, but this was a mutual mistake, and the latter went into possession of the tract that was purchased; hence the matter is treated as though a correct description had been inserted.

It is contended, however, and the trial court held, that paragraph 13 is void for want of certainty because by using the plural of the term, "well site," it authorizes the water company to assert the right to further well sites, rights of way, and waste ditches in any part of the ten acres, and that it was possible

thereunder for this process to continue until appellees' grant is totally dissipated. Only one site, however, was selected, and appellees admit that, if the right to no others is conferred, the water company was entitled to a conveyance of it, notwithstanding its precise location is not given; the general rule being that the benefit of the defect accrues to the grantee where an exception or reservation is not described with sufficient certainty. *Lange* v. *Waters et al.*, 156 Cal. 142, 19 Ann. Cas. 1207, 103 Pac. 889; *Stephens* v. *Terry,* 178 Ky. 129, 198 S. W. 768. But there is an exception to this rule where a parcel of land is excepted from a larger tract; in that instance the grantor can cure the uncertainty by selecting the excepted quantity, and the exception is not void for uncertainty if the selection is made within a reasonable time. *Stephens* v. *Terry, supra.* The rule is stated thus in 13 Cyc. 679:

"Uncertainty or vagueness of description renders a reservation void, unless there is something in the exception, deed, or evidence whereby it can be made sufficiently certain. Uncertainty of location can, however, in a proper case, be cured by the grantor's election within a reasonable time, followed by acts *in pais.*"

As just stated, only one well site was selected, and, in view of the fact that appellees have only ten acres out of many thousands in the project, that it would require only a small part of the water one well produces to irrigate it, and that to avoid waste by taking the water too far in ditches and canals the wells would be scattered to some extent throughout the project, it is more than probable, in fact almost a certainty, that an attempt to select a second one will never be made. The fact, however, that there may exist a bare possibility that others can be selected

would not justify a court in holding void a provision of the contract entered into in good faith, upon the ground that the selection of a great many well sites would result in the total elimination or unreasonable lessening of appellees' grant, when the practical situation suggests that an effort of this kind will never be made. To set aside an important provision of a contract upon such a ground would, it occurs to us, be straying too far from the practical situation to one entirely too improbable. It will be time enough, as we view it, to consider this question when a situation arises presenting it, and, if the court should ever be confronted with it, there can be little, if any, doubt but that it will hold that other sites cannot be selected. The whole record points to the fact that it was intended that only one should be conveyed, and the rule that the selection must be made within a reasonable time would aid in bringing about this result.

It being clear, therefore, that the water company had become the equitable owner of the well site in question, and that its interest therein had been transferred to the appellant before appellees rescinded, appellant's title thereto is good, and the judgment fixing a lien thereon and ordering it sold finds no basis in the record. The judgment therefore is modified by eliminating this portion of it. There was of course no order that appellant repay the purchase price and the value of the improvements, but, in so far as the judgment declares that the contracts are rescinded, that appellees have a lien on the ten acres, exclusive of the well site, for these sums, and that the same be foreclosed and the land sold to satisfy it, it is affirmed.

ROSS and LOCKWOOD, JJ., concur.