## Dix v. Carmack.
(Decided June 3, 1938.)

FAULKNER & FAULKNER, CHARLES W. MORRIS and F. A. GARLOVE for appellant.

W. W. REEVES, C. A. NOBLE and F. J. EVERSOLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This case grew out of the same accident that was involved in the case of Dix v. Gross, 271 Ky. 231, 111 S. W. (2d) 673. It occurred along the concrete highway between Hazard, Kentucky, and Lothair, a contiguous municipality. The appellant and defendant below, C. C. Dix, owned and operated a number of taxicabs in and around Hazard. One of his chauffeurs was Jesse Davis, who was driving the involved one in this case. The accident occurred about midnight on the night of January 21, 1934, by the taxicab in which appellee and plaintiff below, S. P. Carmack, was a passenger, running over a bluff and landing in a stream of water below, resulting in the infliction of injuries upon and to the driver and the three passengers he was transporting—one of whom was plaintiff Carmack, another the appellee, Gross, in the case referred to, and the other one being Daisy Ruth Catron. Each of them filed separate actions against Dix to recover compensation for their injuries. The one filed by Gross was tried on October 18, 1935, whilst the instant one filed by Carmack was tried eight months and nine days thereafter, and on May 19, 1936, resulting in him recovering a judgment against defendant, Dix, in the sum of $2000.00. The latter's motion for a new trial was overruled and from the verdict and judgment pronounced thereon he prosecutes this appeal—urging through his counsel only two grounds for a reversal (1) that the evidence is insufficient to support the verdict and as a consequence his motion for a directed verdict in his favor should have been sustained; but if not, then the verdict is flagrantly against the evidence, and (2) error of the court in permitting plaintiff to file an amended petition at the time and stage of the trial at which it was done.

1. Ground (1) was also urged and relied on in the Dix v. Gross Case, above referred to, but under the evidence as contained in that record we overruled it, although the judgment obtained by Gross was reversed upon another ground not appearing in this record, and therefore, unavailable on this appeal. The briefs in this instant case were filed before the rendition of our opinion in the Gross Case and, therefore, no reference

is made by counsel for plaintiff, Carmack, to our ruling upon the same ground urged in that case. However, we take judicial notice of our own records, and if the evidence in this case was the same or substantially the same as it was in that case we would feel ourselves bound to follow the ruling made with reference thereto as was done in that (Gross) case. But an examination of the testimony heard at the trial of the two cases, occurring more than eight months apart, is radically different—so much so as to render our opinion in the Gross Case of no precedent weight in the determination of the same ground in this one. A reading of our opinion therein will furnish the information as to the way and manner the accident happened, and how the inmates of the taxicab received their injuries.

Briefly stated they were and are, that the three passengers in the taxicab either resided out of or had occasion to go from the town of Hazard some distance to their nearby destinations. From a point near the corporate limits of Hazard, in traveling the highway leading out of it, the concrete road is for some distance built on the edge of a bluff over which the taxicab was precipitated. Just about the time of or just before entering upon that space the taxicab passed an automobile parked on the right side of the road where it was the duty of the taxicab to travel and where it was traveling and it circled around the parked automobile in passing it. Soon thereafter the passed automobile started up behind the taxicab and in the same direction, and, according to all of the testimony, it was wobbling from side to side in the road, to some extent at least, and traveling at a speed of about 40 miles per hour. As it attempted to pass the taxicab—which the driver had pulled over to his right so that his right wheels were off the concrete—it struck some part of the taxicab on its left side and at the rear end, when, according to the witnesses, it turned to the right and again struck the left side of the taxicab near its front. Some of the witnesses stated that as a result of the collisions the passing automobile became temporarily fastened in some manner to the taxicab, but it soon became released and continued its course at a rapid speed and disappeared, never to be discovered.

Practically all the testimony showed that the taxicab shortly after being released from the passing and clearly negligent automobile, ran between 25 and 40

feet before it went over the bluff, and that because of the bumping that it had received and the changing in the road of its positions, thereby made, its driver was unable to get it back upon the concrete before it went over the bluff. The only substantial evidence to the contrary, as contained in this instant record, was the testimony given by Gross (the appellee in the case, supra) he having testified for plaintiff in this case. He stated that he was sitting on the front seat with the driver of the taxicab. He described the maneuvering of the passing automobile somewhat after the fashion we have stated it, but with all of the coloring he could afford to give it favorable to the plaintiff and against defendant. He said in his testimony that the taxicab continued to travel at about the same speed (25 miles per hour) from the time it was driven from or compelled to leave the highway for a distance of about "250 or 300" feet before going over the bluff, and that he requested the driver to get back on the road a number of times before the accident happened, but that he negligently failed and refused to do so.

There was an automobile parked on the same side of the highway next to the bluff at a distance of some 75 or 100 feet beyond where the taxicab went over it, and three or four witnesses who were in that parked automobile testified for plaintiff, and they substantiated the testimony of Davis, the driver of the taxicab, in his description of how the accident happened, which was as we have hereinbefore stated, i. e., that the approaching automobile from his rear struck the left rear side of his taxicab and then its front left side; that before the collision he had pulled as far to his right as he thought he could safely go, having seen the approach of the car from his rear through the mirror of his car in front of him, and also having heard the shrieking sound of the horn that the guilty passing automobile was making; that he did not have time to put on his brakes but used every effort in his power to get back on the road, though unable to do so within the 30 or 40 feet traveled before running over the embankment.

The testimony of Gross was practically all that was introduced at the instant trial tending to establish negligence on the part of the driver of the taxicab, since if he traveled off the concrete highway for a distance of 250 or 300 feet before getting back on it, his failure to do so would be some proof that he was guilty

of negligence in the absence of some sort of explanation furnishing a legal reason for his failure to do so. If, however, the accident occurred as detailed by Davis, and as substantiated by some four or five other witnesses, then it is difficult to perceive any negligence on his part. Clearly, in any event no duty he owed to his passengers was violated up to the time his taxicab was struck by the passing car. Therefore, if he was guilty of any negligence at all it consisted in what he did or failed to do thereafter and before the accident.

Plaintiff herein was on the back seat of the taxicab and he had fallen soundly asleep from the time the taxicab passed the later colliding automobile while it was parked on the same side of the road necessitating the taxicab's going around it. That place was about 150 yards from where the collision later occurred in the manner described. He was sleeping so soundly that he knew nothing until he discovered himself in the waters below the precipice after the taxicab had taken its tumble. Therefore, his testimony has practically no bearing, if any whatever, on the issue of negligence.

While testifying Gross was confronted with a written statement signed by him, and which he made in the law office of Mr. Jesse Morgan, his uncle, some two or three days after the accident happened and while his injured arm was in a cast and carried in a sling. Therefore, he did not in person sign the statement, but he requested the stenographer who wrote it down to sign his name to it, according to the testimony of three or four witnesses who were present. He admitted making a statement in the office of Mr. Morgan, but he denied practically all of the written one and said that the portion of it corroborating Davis and other witnesses for defendant was fraudulently inserted therein by the stenographer who drew it and who testified that she transcribed it verbatim as made and given by Gross at the time. The pertinent part of that statement to the question now under consideration was and is:

"My name is Colburn Gross, and I was a passenger in the car driven by Jess Davis and owned by C. C. Dix which car wrecked while I was a passenger on January 21, 1934. I had started to Lothair, Kentucky, and I got into this taxi on Main Street in Hazard and when we got about mid-way between Lothair and Hazard, we were traveling about 20 or 25 miles per hour

(not any faster than that, if not slower because it was foggy and he was not able to drive rapidly). It seemed to me that the driver of the taxi I was in was using all precaution to drive safely. There was a car going in the same direction we were, overtook this car and blowed for the road and this taxi got over far as he could on the right side of the road, and this car in passing us sideswiped us, deliberately cut into us and sideswiped us causing us to go over to the side of the road on the bank and he stayed on the edge of this road about twenty or twenty-five feet, and hooked us on the front and had hit both fenders and deliberately cut into us on the front causing us to overturn over this bank. I was looking straight at him, and know what he was doing, he just zig-zagged from one side of the road to another before he cut into us the second time, overturning us.''

He positively denied having made that much of the written statement that was presented to him, and which, as we have seen, was made only a few days after the accident happened, and perhaps before he had concluded to file an action against Dix to recover damages for his injuries. Both Dix and Davis supported the stenographer as to the accuracy of the inserted language in its verbatim words as made by Gross at the time. Some witnesses furthermore testified that he shortly after the accident in giving a description of it stated to them substantially the same as was incorporated in his written statement, supra, to Mrs. Hemphill, the stenographer. A witness for plaintiff, Eli Couch, then a deputy sheriff of the county, testified that he went to the scene of the accident about fifteen minutes after it happened and was shown the place where it happened and that there were plain indications of the taxicab having run only ''30 or 40 feet'' after it left the concrete highway until it went over the bank. He did not testify in the Gross Case, supra.

Henry Elkins was one of the witnesses who testified to verbal statements made by Gross to him on Monday or Tuesday following the Sunday night upon which it occurred and in which he stated to Elkins, as testified to by him, ''That Jesse Davis the driver of the taxi which was wrecked, was not to blame for the accident which had happened on Saturday night. * * * But that some drunken driver or third person in an automobile ran into the taxicab and side-swiped it and knocked it

off the highway and into the river." As stated, other witnesses testified to similar conversations and statements exonerating Davis from any blame in producing the accident complained of.

At the trial of the Gross Case, supra, Arnold Elkins and Joe Begley testified for plaintiff and their testimony sustained that given by Gross on the trial of this case relating to the distance that the taxicab ran from the point where the passing automobile struck it and where it went over the bluff—thus substantiating his testimony given in that case upon the only fact in this case upon which negligence on the part of the driver could be based. Arnold Elkins was not introduced as a witness for plaintiff, Carmack, in this case as he was for plaintiff Gross in the latter's case; but on the contrary he was introduced as a witness for the defendant, Dix, in this case, and he gave testimony in fortification of what was testified to by Jesse Davis and the other witnesses introduced by the defendant. Joe Begley did not appear in this case at all for either side, and not a witness who did testify substantiated the testimony of Gross which was itself in direct conflict with his written statement made to and transcribed by the stenographer and signed by her at his instance, as testified by herself and the other witnesses who were present.

It is, therefore, too plain for discussion that the mirrorings of the testimony in the two trials (the Gross Case and this one) are so widely apart and are so different—touching the only negligent conduct of the driver of the taxicab upon which the verdict could possibly be sustained—as to make our rulings in the one (Gross) case no precedent whatever to be followed in this one. The evidence on that sole piece of negligent conduct of the taxi driver in this case reduces itself to the testimony given by Gross alone at the trial of this case. But it was contradicted by practically every other witness and circumstance in the case, and also contradicted by the written statement he made in the office of his uncle, attorney Jesse Morgan. It was likewise contradicted by the visible signs on the ground that witnesses saw almost immediately after the accident happened, although there was some testimony contrary thereto (with reference to tracks) but the witnesses who so testified knew nothing about the motor vehicle that made the tracks to which they testified. In

addition thereto everyone admits that the parked automobile in front of the taxicab was only about 130 or 140 feet away from the point of the collision and about 30 or 40 feet nearer the point where the taxicab went over the bluff. If the taxicab had run the 250 or 300 feet that Gross testified it did at this trial, it would necessarily have collided with that parked automobile which was on the same side of the road. But as many as four witnesses testified, including its occupants (as did also Davis), that the taxicab went over the bluff some 100 or more feet before it reached the point where the parked car was stationed. Therefore, we see that the crippled testimony of Gross—as given by him at the trial of this case, is not only uncorroborated, but positively contradicted by a number of witnesses and by the physical facts as testified to by a greater number of witnesses. On the other hand, his testimony as given in his trial was fortified by other witnesses, one of whom, as we have seen, testified for defendant at the Carmack (this) trial. With the two records so divergent in the testimony presented we do not hesitate to conclude that in this case the verdict was flagrantly against the evidence, but, perhaps, not so much so as to authorize a peremptory instruction in favor of defendant, since the testimony given by Gross alone was most probably sufficient to authorize a submission of the case under the scintilla rule.

2. Considerable argument is made to convince us of the alleged error as a basis of ground (2), supra, but without elaborating the question we are convinced that the court did not depart from an allowable discretion in permitting the amendment to be filed. It consisted only in alleging an additional act of negligence on the part of defendant, i. e. that he was negligent in employing an inefficient driver of his taxicab; but there was no proof whatever to sustain that charge. On the contrary, the driver, Davis, was shown to be an experienced and most competent one, and the court did not submit to the jury any instruction relating thereto. All other questions not discussed, or determined, are reserved.

For the reasons stated the judgment is reversed, with directions to sustain the motion for a new trial, and to set it aside, and for proceedings consistent herewith.