403 P.2d 828

**PHOENIX TITLE AND TRUST COMPANY, a corporation, Marvin Lustiger and Thelma Lustiger, his wife, Henry Steinberg, Lake Mead Land and Water Co., a corporation, Appellants,**

v.

**J. M. SMITH and Winnie E. Smith, his wife, Dale D. Smith and Barbara M. Smith, his wife, Appellees.***

**I CA–CIV 40.**

Court of Appeals of Arizona.

July 1, 1965.

Rehearing Denied Sept. 2, 1965.

to this Court pursuant to Section 12–120.23 A.R.S.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Walter Cheifetz, Phoenix, for appellants.

Hughes & Hughes, by John C. Hughes, Hess Seaman and Renz L. Jennings, Phoenix, for appellees.

CAMERON, Judge.

Plaintiffs below, appellants herein, brought suit to quiet title or for declaratory judgment to determine possession in and to some 40,000 acres of land in Mohave County, Arizona. Appellant, Phoenix Title and Trust Company, appears in its capacity as a trustee.

In the summer of 1956, the defendants below, appellees herein, entered into negotiations to purchase some 45,000 acres of land, including some patented mining claims situated in Mohave County, Arizona. The purchase price was $150,000. Other than the patented mining claims, mineral rights to the property had been reserved by prior grantors. The agreement for sale of the 45,000 acres, comprising what is called the Diamond Bar Ranch, was dated 1 August, 1956, but was not signed until October, 1956. Defendants, by agreement dated 3 October, 1956, contracted to sell 40,000 acres of the 45,000 acres purchased, less the patented mining claims, to Southwestern Realty

Company for the amount of $200,000. In the agreement for sale, the following provision is contained:

"The sellers herein reserve unto themselves, their heirs, executors, and assigns, all range use rights."

The warranty deed to the said 40,000 acres also contained the provision:

"The grantors herein reserve unto themselves, their heirs, executors, and assigns, all range use rights."

The agreement for sale is a form agreement prepared by Phoenix Title and Trust Company and contains the following provisions as part of the *printed* form:

"Buyer may enter into possession of said property and continue in such possession for and during the life of this agreement. Buyer agrees to maintain said premises and all improvements thereon in good repair to prevent no waste thereof and take the same care thereof as a prudent owner would take."

The agreement carries Phoenix Title and Trust Company escrow number 541882.

Also on 3 October, 1956, Southwestern Realty Company, an Arizona corporation, entered into an agreement to sell the same 40,000 acres to George L. Dobson, a resident of California, for the amount of $270,-000. This agreement was also on plaintiff Phoenix Title and Trust Company's form (escrow number 541883), and referred specifically to the rights of the defendant "in and to all range use rights in the within property". The sales price, $270,000, was later reduced to $250,000.

The testimony indicates that Mr. Dobson thought he was dealing with the defendants in the purchase of this land through Mr. O. C. Williams as broker, and not until late in the transaction did he realize that Southwestern Realty Company was to be a party to the transaction. The testimony also indicates that the defendants were aware of this so-called "double escrow" and had no objections to Southwestern selling this property for whatever it could obtain.

The testimony is abundantly clear in the trial below, that the defendants and Mr. Dobson and Mr. O. C. Williams, acting for Southwestern Realty Company, intended in this transaction to transfer "exchange rights" only in and to the 40,000 acres. Mr. Dobson understood this, Mr. Williams understood this, and it was clearly Mr. Smith's intention. The instruments as recorded in the office of Mohave County Recorder, however, are completely silent as to this intention.

By "exchange rights" as defined by the parties, is meant the right of the holder of the "rights" to apply to the United States Government to "trade" or "exchange" this property for other government property located elsewhere in the state or county on whatever basis the authorities will agree to trade.

When Mr. Dobson was unable to exchange his interest in and to the 40,000 acres for other land held by the federal government, he then sold his interest to other parties, some of whom comprise the plaintiffs herein.

■ It should be noted that though the defendants strongly dispute the right of the buyers to enter into possession of said property, that the printed portion of the agreement for sale specifically provides that "buyer may enter into possession of said property and continue into such possession for and during the life of the agreement", and we assume thereafter when the agreement is performed. The provision is in direct conflict with the interpretation placed upon the reservation of range use rights by the defendant. Generally, if the written provisions of a contract, here the reservation of range use rights, are inconsistent with the printed provisions, the written matter deliberately added by the parties must prevail. Wilhorn Builders v. Cortaro Management Company, 82 Ariz. 48, 308 P. 2d 251 (1957); Deuel v. McCollum, 1 Ariz. App. 188, 400 P.2d 859 (1965).

The question then before this Court concerns the legal effect in the agreement for sale and in the deed of the reservation of

range use rights by the defendants-sellers to Southwestern Realty Company.

It has been said that the terms "reservation and exception" are often used interchangeably and that their distinction is "technical, slight and shadowy", Victory Oil Co. v. Hancock Oil Co., 125 Cal.App.2d 222, 270 P.2d 604 (1954). Ordinarily, for the purpose of determining what is granted in a deed, the distinction between an exception and a reservation is of little importance since by whatever name the property excepted or the estate reserved is never considered a part of the grant. Reynolds v. McMan Oil & Gas Co., 11 S.W.2d 778 (Tex. Com.App.1928). While an exception operates on the description on the property and withdraws from the description the excepted property, Moore v. Davis, 273 Ky. 838, 117 S.W.2d 1033 (1938), a reservation is technically a newly created right which grantee impliedly conveys back to the grantor. Goss v. Congdon, 114 Vt. 155, 40 A.2d 429 (1945), Nelson v. Bacon, 113 Vt. 161, 32 A.2d 140 (1943). In the instant case, the "range use rights" would properly be considered a reservation since it is a new right or use created out of the property granted to Southwestern Realty Company.

Counsel cite no cases and we have been unable to find any in which a reservation for grazing or range use purposes has been reserved to the grantor, their heirs and assigns, in perpetuity. We must, therefore, consider some rules of construction in determining the effect that this clause has at law on future purchasers of this property. Generally, doubts arising as to the intention of the parties must be resolved in favor of a free and untrammeled use of the land. Marshall v. Callahan, 229 S.W.2d 730 (Mo.App.1950). Also, benefit of the defect of description of exception or reservation accrues to the grantee. Pima Farms Co. v. McDonald, 30 Ariz. 82, 244 P. 1022 (1926).

"* * * when a party chooses the language which he puts into a form contract, in case of doubt of its effect the general rule is that it is interpreted against him." Liberty Mutual Insurance Co. v. Hercules Powder Co., 224 F.2d 293, at 294 (3 Cir. 1955).

And, also:

"A well-settled rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it; and another equally as well-settled rule is that the language of the deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against the grantor." Kuklies v. Reinert, Tex.Civ.App., 256 S.W.2d 435, at 442 (Tex.Civ.App., 1953).

Added to these rules is one equally important rule that the instrument must be viewed in its entirety:

"* * * the fundamental rule is that the intention of the parties is arrived at by the language contained within the instrument." Corn v. Branche, 74 Ariz. 356, at 358, 249 P.2d 537, at 538 (1952).

It should be pointed out that nothing in the agreement for sale or deed indicates a sale of "exchange rights". The sale is of "all certain real property" described with the reservation of the range use. There is no mention of a sale of "exchange rights".

Defendants contend that by reserving the "range use rights", that the defendants retained all of the surface rights in and to the 40,000 acres as against every one and in perpetuity. That the purchasers would not be allowed to use the property for any reason other than for exchange purposes and "that defendants had the right to the exclusive possession of the land". The purchasers had been paying the taxes on the land.

To put the construction upon this reservation desired by the appellee, would be repugnant to and completely destroy the grant made by the defendants:

"It is perfectly legal for parties to contract and place in their deeds certain reservations or exceptions for the use and possession of the conveyed prem-

ises as a part of the consideration thereof to be enjoyed by the grantor, his heirs and assigns, for a stated period of time. * * * Of course, reservations or exceptions that contradict the grant, and are so repugnant as not to be able to determine whether any title passed at all, would be void and nonenforceable." Word v. Kuykendall, 246 S.W. 757, at 759 (Tex.Civ.App. 1923).

In construing the term "range use rights" in the agreement for sale and in the deed herein, it is our opinion that the only logical conclusion we can reach and still uphold the validity of the grant is this: the defendants, their heirs and assigns, have the use of this range for so long as there is a range to use, and they have the exclusive right to use the land for range use purposes. When the range is put to a higher use by the grantees, such as constructing a home or breaking the soil for farming, then the range is destroyed and the right to use for range purposes that portion of the property put to the higher use is withdrawn until such time as the property may revert to range again.

We express no opinion as to the effect of a deed conveying "exchange rights" only or even if "exchange rights" can be sold. We merely state that the interpretation that the defendants attempt to place on the reservation in the instant case, is so inclusive as to totally consume the grant and be repugnant to the grant itself.

The matter is reversed and remanded for proceedings not inconsistent with the opinion.

STEVENS, C. J., and DONOFRIO, J., concur.