**Ralph W. HOLLAND, Sr., Appellant (Plaintiff below),**

v.

**Louise Hunter WINDSOR and William Todhunter Windsor, Partners doing business under the special partnership name of Windsor Ranch Company, Appellees (Defendants below).**

No. 3708.

Supreme Court of Wyoming.

Nov. 17, 1969.

A. G. McClintock, Cheyenne; David N. Hitchcock, Laramie, for appellant.

George J. Millett, of Pence & Millett, Laramie, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an action wherein plaintiff sought to enforce certain provisions contained in a deed from plaintiff to defendants' predecessors wherein plaintiff excepted and reserved 80 acres, and for correction of certain descriptions of said 80 acres due to a scrivener's error. Defendants counterclaimed seeking to have defendants declared the owners in fee simple of certain lands conveyed by said deed, including the attempted excepted lands, and for an accounting of monies received by plaintiff from hunting, fishing, and camping rentals upon the lands in question.

From a judgment denying plaintiff's complaint and granting defendants' counterclaim, plaintiff appeals.

On November 30, 1959, plaintiff sold certain ranch lands to Vowers Farms, Inc. The recorded deed from plaintiff to Vowers contained the following provision:

"AND ALSO EXCEPTING AND RESERVING TO GRANTOR, a total of eighty (80) acres in said Sections 34 and 35, Township 13 North, Range 77 West, and along Bear Creek West of the Laramie River, which 80 acres shall include those portions of the Southwest Quarter of the Southwest Quarter (SW¼SW¼) of Section 35 [1] and of the Southeast Quarter of the Northeast Quarter (SE¼NE¼) of Section 34 lying northerly from the Laramie River, together with all fences, ditches, water rights, buildings, improvements and appurtenances situate thereon or appertaining thereto, and such additional real property as Grantor shall select in said Sections and from any lands hereafter acquired by Grantee or any of its sotckholders [sic] along Bear Creek, which 80 acres may be divided and selected by Grantor in any shapes or di-

mensions which he may desire, for subdivision and sale of cabin or building sites or any other purposes, and which shall include all buildings, improvements and appurtenances thereon and shall be conveyed to Grantor promptly by Grantee upon demand, either as a unit or in such portions as shall be requested by Grantor until the full 80 acres shall have been so conveyed, it being understood that Grantor will pay all property taxes upon said buildings and improvements, upon the parcels of such 80 acres herein specified, and such additional portions as shall hereafter be conveyed to him, and that in selecting the additional portions Grantor will minimize the amount of hay land or meadow land to be included and will give Grantee an adequate easement across such 80 acres for access to the River for stock watering, and that full right of access to and from said 80 acres by the nearest convenient route to the nearest public highway will be preserved and confirmed for Grantee and his invitees, licensees, successors in interest and assigns in each conveyance from Grantee to Grantor, and shall be and hereby are reserved, preserved and retained by Grantor as to the portions herein specified; * * *"

Following the sale to Vowers, Holland paid the taxes on the SE¼NE¼ of Section 34 and the SW¼SW¼ of Section 35 through the 1963 assessment, after which the assessor's office corrected the Section 35 description to SW¼NW¼, and Holland then paying taxes accordingly. Holland testified that at the time he sold his holdings to Vowers he and his wife wanted to retain the river and the land adjoining for cabin sites and wished to get possession of the BLM land adjoining his deeded land. He told the buyers that it had been possible to purchase BLM land, that the portion west of the land Holland had selected was what he would like to have purchased, and that if grantee-

1. Plaintiff maintains this description was the result of inadvertent scrivener's error and that the parties to the deed and their successor in interest have understood that the reference should be the SW½NW¼, Section 35.

Vowers would take up this the amount of meadow taken could be minimized. Vowers never acquired title to the BLM land and on November 1, 1963, conveyed the land obtained from Holland to Jenkins, which deed contained a recital that the conveyance was "subject to all reservations, easements, rights-of-way, and other conditions or restrictions contained in prior conveyances of any part of this land or otherwise of record in the County Clerk's office of Albany County, Wyoming." In March 1965 Holland presented Jenkins with a topographic map showing the land he wanted and presented a warranty deed describing it, asking Jenkins to execute the deed, since he wanted to get the 80 acres established and the corners marked so that it wouldn't be taken or considered not Holland's by adverse possession. Jenkins did not comply, and on June 8, 1965, conveyed to defendants, the deed containing the following: "subject to reservations contained in the warranty deed recorded in Book 101 of Photo Records, page 343, in the office of the County Clerk of Albany County, Wyoming * * *," which reference was to the deed from plaintiff to Vowers Farms, Inc. Defendants admit that prior to the purchase of said lands they had actual as well as constructive notice of the aforesaid exceptions and reservations. In July 1965 plaintiff submitted a deed to defendants wherein he sought to have defendants reconvey to him the lands which he thought should be reconveyed to him under the terms of the provision above noted. Defendants refused to execute the deed as requested by plaintiff, and plaintiff filed his suit herein. Plaintiff prayed in his complaint that the exceptions and reservations be corrected because of a scrivener's error by changing the reference from the SW¼SW¼ to the SW¼NW¼ of Section 35. Plaintiff further prayed that defendants be required to execute and deliver to plaintiff a conveyance of 80 acres as described in the deed previously submitted to defendants by plaintiff.

Defendants answered that they had no knowledge or notice until after they purchased the lands that plaintiff contended there was any error in the description as contained in the exceptions and reservations. Defendants further answered alleging that the provisions of said deed whereby plaintiff sought to reserve 80 acres were not binding upon defendants, were void under the statute of frauds, were void under and by reason of the rule against perpetuities, and were void because they are ambiguous.

Defendants also counterclaimed, asking that Windsor Ranch Company be declared the owner in fee simple of the lands in question, and further for an accounting of rentals received by plaintiff from the lands in question.

After plaintiff's complaint and defendants' answer were filed, the parties entered into a pretrial stipulation wherein they stipulated and agreed that the issues were as follows:

"A. Whether or not the alleged scrivener's error * * * was made, as alleged in paragraph 2 of the First Count of the Complaint, in the reference to the Southwest Quarter of the *South*west Quarter (SW¼*S*W¼) rather than the Southwest Quarter of the *North*west Quarter (SW¼*N*W¼) of Section 35 in referring to the portions, including SE¼NE¼ of Section 34, 'lying Northerly from the Laramie River'; and, if so, whether the Court may reform the deed and correct the error, and should do so.

"B. Whether or not Plaintiff's attempt to reserve 80 acres in Exhibit A, his deed to Vowers Farms, Inc., was valid and effective, or was void and ineffective, in whole or in part, as contended by Defendants, because

"(a) Not binding upon Defendants;

"(b) Void under and by reason of the statute of frauds (§ 16–1 Wyoming Statutes, 1957);

"(c) Void under and by reason of the rule against perpetuities (§ 34–39 Wyoming Statutes, 1957), and the rule against

restraint upon alienation for an un-reasonable period of time;

"(d) Void for the reason that the provisions in question are so ambiguous that the meaning thereof cannot be ascertained, and they are therefore void and unenforceable.

"C. If Plaintiff's claim to 80 acres is valid and enforceable, whether or not he is entitled to the land described in the Exhibit C deed; and, if not, what land is he entitled to.

"D. Whether or not Defendants are entitled to a Decree of this Court quieting their title to the lands involved herein as against Plaintiff, and to a full accounting with respect to any and all rentals or leases made by Plaintiff concerning such lands, and a judgment against Plaintiff for payment of any amount of money, as prayed in their Counterclaim."

Trial was had before the court without a jury, and judgment was entered wherein the court found generally for the defendants and against plaintiff on plaintiff's claim, and generally for the defendants and against plaintiff on defendants' counterclaim. The judgment on defendants' counterclaim decreed that defendants were the owners in fee simple of all lands subject in this suit, and further awarded defendants judgment against plaintiff for the sum of $755, as defendants' share of rentals received by plaintiff, together with interest in the sum of $119.90, and defendants' costs of $50.

In light of the complexities presented by the litigation, it would seem that the parties in the interests of delineating the problem with clarity and thereby settling the controversy would certainly have requested the trial court under the provisions of Rule 52(a), W.R.C.P., to state findings of facts and conclusions of law separately. However, since this was not done, we must address ourselves to each aspect under which the trial court would under the circumstances have been justified in finding for the defendants.

Plaintiff contends that the exception and reservation of 80 acres is valid, effective, and enforceable. Defendants argue that the trial court properly held the deed provision to be void and unenforceable because it violated the rule against perpetuities and even were it to be determined that this rule is not here applicable the deed is void for ambiguity and uncertainty of description. They further argue that the statute of frauds applies to a deed as well as a contract and that in any event plaintiff was not entitled to prevail because his selection was not in accordance with the deed provision. Additionally, although plaintiff argues that the reservation may properly be corrected for scrivener's error in the reduction thereof to writing, defendants maintain the trial court properly refused to reform the deed.

## Reformation

█ Plaintiff insists that the evidence establishes a scrivener's error resulting in a mutual mistake whereby the deed from plaintiff to Vowers Farms, Inc., incorrectly refers to the SW¼SW¼ instead of the SW¼NW¼ of Section 35, and that the uncontradicted testimony of Mr. Hitchcock, supported by rough notes and drafts made at the time the deed was drawn, clearly shows that it was intended to refer to the SW¼NW¼ and not the SW¼SW¼ of Section 35.

The exception and reservation states that said 80 acres shall include those portions of the SW¼SW¼ of Section 35, and SE¼NE¼ of Section 34, lying northerly from the Laramie River. Appellant argues that none of the SW¼SW¼ of Section 35 lies northerly from the Laramie River, that an examination of a map or plat by the grantee-defendants would disclose this fact and thus put the defendants on notice that there was some error, and cites Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159, but that case involves the original parties to the agreement. Moreover, it was the position of defendant William Windsor that

the SW¼SW¼ of Section 35 did indeed lie northerly from the Laramie River [2] ; and while plaintiff maintains that whether all or any part of the SW¼SW¼ lies northerly of the river would require reference to a map of a much larger area than that possessed by the plaintiff or the making of a survey which would require considerably more effort than was expended by the parties to the agreement, this would not have prevented the trial court from accepting Windsor's testimony.

Here, defendants were innocent purchasers for value, and the alleged error of description was not of itself of such a nature to put defendants on notice.

Plaintiff cites Crawford v. Brown, 215 Miss. 489, 61 So.2d 344, wherein reformation was permitted against the original and two subsequent grantees, the last being Brown. But there the original grantor, Crawford, remained in possession of the lot mistakenly granted, and further grantor had the lot under fence, and Brown, upon viewing the enclosure, inquired of his grantor if Crawford had the particular tract under fence long enough to cause him (Brown) any trouble. Crawford had the tract under fence and was using the same as part of an enclosure near his residence. The court there said that Brown knew that the enclosure belonged to Crawford. The cited case is distinguished from the case at hand in that defendant had no such notice. Reformation will not lie.

*Validity of Reservation and Exception*

We next address ourselves to plaintiff's thesis that his reservation and exception of 80 acres was valid and effective. Defendants had constructive notice of his reservation and exception of 80 acres in his deed to Vowers Farms, Inc., and in addition, had actual knowledge of the provision of said deed. Defendant William Windsor was advised of the reservation and exception; he read and reviewed it in April, although the lands were not finally conveyed to defendants until June 8, 1965. He testified, "I knew the reservation called for a total of 80 acres to be given to Mr. Holland." Defendant L. H. Windsor knew of the reservation "as soon as my son negotiated to buy the ranch." The abstract opinion by defendants' attorney dated June 7, 1965, called attention to the reservation and exception. The opinion advised the defendants that although the exception and reservation might be void because the description was ambiguous, or was not a vested interest, in any event, it constituted a cloud upon the title.

In this case there can be no doubt the parties intended that plaintiff except and reserve 80 acres. The plaintiff selected the 80 acres to which he thought he was entitled under the terms of the provision in the deed and through the years paid taxes upon 80 acres of the land.

In Burnell v. Roush, Wyo., 404 P.2d 836, we discussed exceptions and reservations and said that an exception saves back part of the grant, while a reservation creates a new right. Here, there is clearly an exception. Holland saved back 80 acres. Whatever is excluded from a grant by an exception remains in the grantor as of his former right or title. Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170, 1177. In the instant case, plaintiff did not clearly describe the complete 80 acres he excepted and attempted to give himself a choice of certain of the lands he then owned or lands the grantee might thereafter obtain. Although an exception can only be out of the estate granted, Pederson v. Federal Land Bank of St. Paul, N.D., 72 N.W.2d 227, 233, and should be as clearly described as the parcel granted, Jenkins Co. v. Ramey, Ky.,

---

2. His uncontradicted testimony on cross-examination was "Well, the entire portion of that Southwest Quarter, Southwest Quarter is northerly of the Laramie River." The only other evidence on this point is Plaintiff's Exhibit D, a topographical map, which was received into evidence under the pretrial order and upon which there was no testimony as to the tract in question, but which tends to confirm the defendant's testimony.

239 S.W.2d 458, 459, where an exception is described as a certain quantity out of a larger tract, the grantor may cure the uncertainty by electing to do so within a reasonable time, Jenkins Co. v. Ramey, supra; Dotson v. Kentland Coal & Coke Co., Ky., 265 S.W.2d 466, 468; Pima Farms Co. v. McDonald, 30 Ariz. 82, 244 P. 1022, 1026. No argument has been presented to us on the matter of whether or not the selection was within a reasonable time; however, there is no conflict in the evidence as to when plaintiff made the selection, and if indeed the trial court found the selection not within a reasonable time, we must hold such finding error.

Defendants purchased the property knowing of the reservation and exception. Merely because the provision was not as artfully drawn as it could or should have been is not a basis for denial of relief to plaintiff since the validity of a provision of a deed does not depend upon the absence of all ambiguity. Smith v. Furbish, 68 N.H. 123, 44 A. 398, 403, 47 L.R.A. 226. While it may be that a determination of "minimizing the hay and meadow lands" in selecting the "additional portions," i. e., those not specifically described, may pose some difficulty, it should not be a bar to plaintiff's right of recovery.

### Statute of Frauds

Defendants agree that a conveyance or reservation of a right to select the specific number of acres out of a larger tract is permissible if the unqualified right to select is granted or reserved, but contend that here the description in the reservation was ambiguous and uncertain because of the provision "that in selecting the additional portions grantor will minimize the amount of hay land or meadow land to be included." Such argument presents no valid basis for the trial court's general findings in favor of defendants inasmuch as this minimization affected only "additional portions." We have hereinbefore held that defendants are correct in their position that the deed cannot be reformed, and

technically, as defendant William Windsor said, the SW¼SW¼ of Section 35 lies northerly of the Laramie River as does the SE¼NE¼ of Section 34—although the river also meanders through the SE¼ NE¼ of Section 34 so that only a certain portion is immediately north of the Laramie.

### Rule Against Perpetuities

Although defendants argue that the reservation provision violated the rule against perpetuities, that rule is directed against the vesting of interests at a future date, our statute, § 34-40, W.S.1957, reading:

"No interest in real or personal property shall be good unless it must vest not later than twenty-one years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. The lives selected to govern the time of vesting must not be so numerous nor so situated that evidence of their deaths is likely to be unreasonably difficult to obtain. It is intended by the enactment of this statute to make effective in this state the American common law rule against perpetuities."

As we have already indicated, whatever is excluded from a grant by an exception remains in the grantor. Here the attempted exception clearly shows that neither the grantor nor the grantees intended that the grantees should receive the 80 acres. An exception of land contained in a deed is notice to grantee and his successors. By acceptance of the deed, grantee and his successors are precluded from asserting title to excepted lands. Holland specifically described a portion of the 80 acres he excepted, and reserved the right to determine the exact description of the balance. As we have already said, such selection had to be within a reasonable time, and in our view Holland's selection fulfilled this requirement. Holland having a vested right in the 80 acres, the rule against perpetuities has no application.

In view of our holding that the trial court was correct in refusing to reform the deed, plaintiff's attempted selection of the 80 acres is substantially affected and the cause must be remanded to the trial court and an opportunity given Holland to revise his selection. Plaintiff will be bound to include in his selection the 40 acres described as the SW¼SW¼ of Section 35 and that portion of the SE¼NE¼ of Section 34 lying immediately north of the Laramie River. The remaining acres must be selected from Sections 34 and 35 or either of said sections provided that plaintiff-grantor's stated intent in making the original exception be borne in mind, that is, for subdivision and sale of cabin or building sites including all buildings and improvements. Under our disposition of the cause, the matters of easements, rights of access, and the distribution of monies heretofore received for camping and fishing rights are not feasible of determination in the appeal and should be resolved by the trial court upon the remand.

Affirmed in part; reversed in part; and remanded with instructions.

McINTYRE, Justice (dissenting in part).

I agree with my colleagues that a case for reformation was not made out, since the defendants appear to be bona fide purchasers for value without notice of a mistake in the deed which plaintiff had given to a former purchaser. However, I disagree with the holding that plaintiff is bound to include in his selection the 40 acres described as the SW¼SW¼ of Section 35.

The reservation of 80 acres contained in the deed from Ralph W. Holland, Sr., to Vowers Farms, Inc., clearly states the 80 acres shall include "those portions" of the SW¼SW¼ of Section 35 and the SE¼NE¼ of Section 34 "lying northerly" from the Laramie River. The question therefore is whether there is a "portion" of the SW¼SW¼ of Section 35 lying northerly from the Laramie River. If so, that *portion* must

be included. If not, no *portion* of such 40 acres needs to be included.

The most apparent thing about the SW¼SW¼ of Section 35 is that all of it lies south or *southerly* from the Laramie River. If all of it lies *southerly* from the river, it would be a contradiction to say the 40 acres lie northerly from the river— within the meaning of the reservation we are dealing with.

All of that part of the Laramie River which goes through Sections 34 and 35 is north of the SW¼SW¼ of Section 35. Thus, this 40-acre tract is definitely southerly from the part of the river which flows through Sections 34 and 35.

Moreover, the part of the river which flows through Sections 34 and 35 is the only part of such river in close proximity to the SW¼SW¼ of Section 35. It is true that several miles to the southwest the river flows in a northwesterly direction. It then bends to the northeast and finally flows through Sections 34 and 35 in a northeasterly direction. In a certain sense the SW¼SW¼ of Section 35 lies northerly from that part of the river which is to the southwest and out of the area we are concerned with.

Inasmuch as the SW¼SW¼ of Section 35 is south and not north of that part of the river closest to it, and inasmuch as such parcel is south and not north from the part of the river where Holland was reserving his 80 acres, we ought to say the reservation necessarily refers to the part of the river crossing the lands involved. It is unreasonable to assume the reservation refers to a more remote part of the river.

My colleagues really should agree with me that their holding is untenable, if they will only stop to consider that all of the south portion of the SE¼NE¼ of Section 34 is northerly from the Laramie River in the same sense and in the same way the SW¼SW¼ of Section 35 is. Yet the plaintiff is not required to include in his selection the south portion of the SE¼

NE¼ of Section 34. Surely it is unreasonable to assume that one part of the river applies to one 40-acre parcel and that a part several miles removed applies to the other 40-acre parcel.

· I concur in all my colleagues have said, except they should not, in my opinion, say plaintiff will be bound to include in his selection the SW¼SW¼ of Section 35.

The appended plat is a reasonably accurate representation of the course of the Laramie River in relation to the SW¼ SW¼ of Section 35 and the SE¼NE¼ of Section 34; also in relation to the SW¼ NW¼ of Section 35, which plaintiff-Holland claims should have been referred to in his reservation instead of the reference to the SW¼SW¼ of Section 35.

APPENDIX

N

SE¼NE¼ of
Section 34 →

SW¼NW¼ of
Section 35 ←

SW¼SW¼ of
Section 35 ←

LARAMIE

RIVER

[A248]